## Charles H. Grunwald, Appellant, *v.* William H. Hahn.

*Contract—Building contract—Performance.*

Plaintiff agreed to do the carpenter work for a number of houses which defendant was building, and to take in payment part cash and the conveyance of two houses. He furnished a statement to the defendant showing the amount of cash due for the balance. Defendant tendered the amount stated and a conveyance of two houses. Plaintiff refused the tender, claiming certain defects in the houses, and that he had made a mistake in his statement, and that a larger amount of cash was due. The evidence showed that the defects were in trivial matters, and could have been remedied at a trifling cost. *Held*, that neither the trivial defects in the buildings nor the refusal to pay the disputed balance justified the plaintiff in refusing to take the houses, or entitles him to a recovery of the whole consideration in money.

Argued April 2, 1896.   Appeal, No. 12, Jan. T., 1896, by plaintiff, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1893, No. 189, on verdict for plaintiff for less than claim.   Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Assumpsit for breach of contract.

Plaintiff entered into an agreement with John J. Cassidy to do the carpenter work on fifty-six houses which Cassidy afterwards transferred to defendant. Plaintiff and defendant modified the Cassidy agreement and plaintiff finished the work for the defendant.

The facts appear by the charge of the court which was as follows:

[In this case the claim of the plaintiff by the statement which has been filed is that "the defendant has failed and refused to convey certain houses to the plaintiff, and also that the plaintiff having made a contract to sell one of the houses has not been able to fulfill his said contract by reason of the defendant's negligence and failure aforesaid in not completing said house and failing to convey same to the plaintiff, and plaintiff, relying upon defendant's promise and agreement aforesaid, expended and laid out a large sum of money in endeavoring to build said house."

That apparently is the gravamen of the plaintiff's plea, and yet there is in it that which compels me to give another construction to the statement, for the plaintiff sets out a contract he had with the defendant for work done in the erection of certain houses, and according to that contract he was to be paid a certain amount of money in cash and two houses, subject to two ground rents. The amount of the plaintiff's claim for the work he did was $2,508. The two houses were to be taken at the price of $650 each, subject to two ground rents, a ground rent on each house.

The plaintiff, when he made that contract, was just as much bound to take houses in payment for his services as he was to take money for that portion which was to be paid him in money, and the plaintiff seems, by his counsel, to show he so understood his contract. He seeks, however, to avoid it, because the defendant did not convey to him the two houses.

You have heard the evidence in this case upon that subject; you have heard the testimony of the plaintiff himself, that he said one of these houses he sold and put his vendee in possession, and his vendee remained there in possession for over a year, for thirteen months.

The plaintiff says that he did not at any time tender a deed to the defendant to execute, and on the contrary you have the evidence admitted by him and testified to by the defendant that in September of 1893 a deed was tendered to the plaintiff for these two houses. That was all that the defendant had to do so far as the conveying of title was concerned. The defendant says at the same time he offered to the plaintiff the amount of cash which the defendant understood he owed the plaintiff.

There might be some contest in regard to the amount of cash that the plaintiff was then to receive, but there seems to be no contest as to which houses he was to receive, because the contract itself says it is agreed that one of the said houses should be the second house from Snyder avenue on the west side of Howard street, and the other on the east side of Howard street north of Jackson street. It is admitted, on both sides, that the deed tendered to plaintiff and put in evidence is a deed for these two houses.

The plaintiff also sets up that the houses were not completed. If the houses were not at all completed, if the houses were not

fairly completed, of course the plaintiff could not be compelled to take them, but the evidence before you is that the houses were built; they were roofed, they were lathed and plastered, and when you come to ascertain from the testimony upon the part of the plaintiff and his witnesses as to what it was he complained of when he says the houses were not completed, it was some little piece of paper in some part of the house, or that some little staining had to be done, and there is a question as to whether the transom had not been stained, though one of the witnesses said it ought to be painted.

There is also testimony that ten cents was paid for the amount of staining done in that house. Such trivial things as the plaintiff's witnesses have testified to here do not go to make up any evidence that the houses were not completed.

There is one house about which we have heard a great deal of testimony. On the part of the plaintiff it is testified that the wall was out of plumb, and the testimony of both the plaintiff's and defendant's witnesses is that the wall had been blown by the wind out of plumb; the plaintiff himself put it back, or helped to put it back in plumb. No objection was made to the contract between the plaintiff and defendant that designates that particular house as one of the houses which the plaintiff was to take, because the contract between the plaintiff and the defendant was not made until the 3d day of September, 1892. The testimony shows that at that time the house was under roof and had been plastered, so that when the plaintiff made this contract on December 30, 1892, he was perfectly familiar with that thing which had occurred before. He knew whether he was to take that house, and the house seems to be standing yet, and the building inspector tells you he found nothing the matter with that wall which would require its being taken down.

Even though the defendant promised to do what the plaintiff said he did in regard to the taking out of that wall when he fixed the stair, that would be a question of damages as between the plaintiff and defendant, and would not go to the extent of allowing the plaintiff to say "I will not take the house." That would be a question to be considered as to whether or not the wall had been changed at the time it should have been changed. But in this case the plaintiff has simply declined to take the

houses, that is he has declined to accept the deed for the houses, although he had before really taken possession of one of the houses and sold it and put in possession his vendee.] [1]

[So, gentlemen, so far as this contract has relation to the two houses, I am going to withdraw the case from you, because the undisputed testimony is that the deed for these two houses was tendered, and I am going to submit the case to you as to how much cash consideration was due by the defendant to the plaintiff. I have either to take that view of the case, which I think is the more favorable to the plaintiff, or I would have to charge you absolutely for the defendant. But as I see in the contract it sets up the amount of work done, and sets up the contract between Mr. Cassidy and the plaintiff, I think I shall give a liberal construction to the paper and treat it as though it were a suit brought by the plaintiff against the defendant for the value of his services rendered by the plaintiff in the carpenter work on these fifty-six houses, and not treat it simply as a suit for damages for the failure to convey the houses, because if I treated it simply as that, there would be nothing for you to do but to find a verdict for the defendant, because the plaintiff admits that the deed was tendered to him, the deed is put in evidence; the plaintiff says the defendant tendered him the deed, and, so far as it would be a question of the conveyance of property, your verdict would have to be for the defendant, because that is a matter sworn to by both sides.

The most liberal construction I can put on this statement is to put it as a suit for the value of the work done by the plaintiff for the defendant, and the case has to a very great extent been treated on that basis and argued upon that basis by counsel for the plaintiff in his address to you.

I am going to withdraw from you the question of the houses, and say as to that you are bound to find for the defendant; and then leave for you to consider how much cash it was that the plaintiff was to receive.] [2]

[There is evidence before you that there was a statement made by all the people who were furnishing material or doing contract labor upon these houses shortly after the failure of Mr. Cassidy, and that statement was presented to Mr. Hahn, the defendant, and it was known by the various material-men and mechanics that it was to be presented to the defendant, and

that, upon the basis of the amount of money still due to various mechanics and material-men, Mr. Hahn was to determine whether or not he would go on and complete these buildings. Gentlemen, if you find that was the case, if you find that Mr. Hahn undertook this work and the completion of these buildings on the basis of that paper signed by the plaintiff, then as between Mr. Hahn and the plaintiff, you must take the statements in that paper as being true. That paper says that there were certain amounts of money received by the plaintiff on account of the work which he did and was to do on these houses, and you must take those figures as being true. If, however, you should find—and I leave that question to you, although the evidence I can hardly say throws much light on that subject—if you should find the plaintiff did not know the purposes for which that paper was to be used, that it was to be handed to Mr. Hahn and to be made the basis of his accepting or not accepting the work of the completion of the houses, the plaintiff would not be bound by the figures in that paper. That would make a difference between them of $80.00.

I think that is all the difference in regard to that paper. There are $55.00 which the plaintiff says had been paid him on some other account, but which he had credited in the paper as it is drawn, and there are $25.00 which he says are put in another account, but payment of which is indorsed on that paper as having been received by him on account of these fifty-six houses.

As I say, if you find that he did not know of that paper, then of course he is not to be held bound by it; that would make a difference of $80.00 in his favor, but the mere fact that he made a mistake and wrote on that paper "Received," so much "on account for these particular 56 houses," and made a mistake in so doing, would not give him the right to insist on the $80.00 from the defendant.

You can see that would be very unfair to the defendant if the plaintiff made a mistake. But in making that mistake, if he knew what he was doing was to be the basis of what Mr. Hahn was to do, he is bound by that mistake, so far as Mr. Grunwald and Mr. Hahn are concerned. If, however, you believe that, and take the paper, then you will find that there would be one other question of dispute between the plaintiff and the defendant so far as the amount of money is concerned,

and that is the question whether or not the plaintiff was to pay the defendant $30.00 for lumber which the defendant gave the plaintiff for the erection of the summer kitchen of these two houses.

You have the testimony upon both sides as to that, the testimony upon the part of the plaintiff being that the lumber was given to him; that it was a gift upon the part of the defendant to him; the testimony on the part of the defendant, however, is that the lumber was measured; that the plaintiff said to him that as he must have lumber to build summer kitchens, he might as well buy the lumber from the defendant as from anybody else, and requested the defendant to sell it to him at the basis of what the lumber cost, and the defendant says he so agreed with the plaintiff; that the lumber was all measured and the value of the lumber was $30.00. Ordinarily, when one man would ask another to do a service for him, or to furnish material, the law would presume he was to pay what the services were reasonably worth, or what the material was reasonably worth. Still, that does not prevent a man from making a gift.

When you find this great discrepancy between the testimony of two people, you ought to consider what would be the ordinary thing done, whether the relations between the plaintiff and defendant were such that the defendant would probably make a gift to the plaintiff, or whether it was not merely a matter of contract existing altogether between them, and when the lumber was furnished by the defendant to the plaintiff it was furnished by contract, and the plaintiff was to pay the defendant for the value of it.

The whole question involved in that is $30.00, according to the figures; if you allow the $55.00 and the $25.00 that would be $80.00, there would be due $234. Both sides start with the figures $314 upon which they agree. Starting with that amount of $314 you will say whether or not you shall deduct from that the $80.00 to which I have referred, the $55.00 and the $25.00 which by that paper the plaintiff stated he had received, or whether you will not deduct that amount, and also whether or not you will deduct the amount of $30.00. According to the plaintiff's theory there would be due to him $314 together with interest from the time.

According the defendant's theory there would be due the

plaintiff $204 together with interest. It is as you will find, which one of those two amounts is due by the defendant to the plaintiff, you will find your verdict. Understand, your verdict will be for the plaintiff for some amount. You will find what amount it shall be. The utmost amount would be $314 together with interest, and the least amount would be $204 with interest.

Whether it shall be either one of these, or whatever amount. it shall be, depends upon the way you will ascertain the facts to which I have referred.] [3]

Verdict and judgment for plaintiff for $339.12. Plaintiff appealed.

*Errors assigned*, among others, were (1, 3) above instructions, quoting them.

*Emanuel Furth, Jacob Singer* with him, for appellant.—If the consideration is single the contract is entire, whatever the number or variety of the items embraced in its subject; but if the consideration is apportioned expressly or impliedly to each of its items, the contract is severable: Lucesco Oil Co. v. Brewer, 66 Pa. 355; Quigley v. DeHaas, 82 Pa. 273; Morgan v. Mc-Kee, 77 Pa. 229; Mining Co. v. Jones, 108 Pa. 66; Alcott v. Hugus, 105 Pa. 354; Martin v. Shoenberger, 8 W. & S. 368; Hartman v. Meighan, 171 Pa. 46; Chambers v. Jaynes, 4 Pa. 43; Shaw v. Turnpike Co., 2 P. & W. 454.

An obstinate and perverse refusal to complete a contract which is in the power of the party refusing does not excuse performance: Preston v. Finney, 2 W. & S. 55; Gillespie Tool Co. v. Wilson, 123 Pa. 26.

It cannot be concluded, as a matter of law, that the occupancy of the house under the circumstances in this case was a waiver by the plaintiff of his rights: Bryant v. Stillwell, 24 Pa. 319.

Admitting for the sake of argument that the question of a substantial performance by the defendant of his contract was a matter of dispute, then surely the question as to whether or not he did substantially comply with that which he had bound himself to perform was for the jury to pass upon, and if the jury found that there was in good faith a substantial compliance by the defendant with his part of the contract, then the next

inquiry for the jury would have been to determine how much, if any, damage was suffered by the plaintiff by reason of the defendant's failure to specifically perform: Pallman v. Smith, 135 Pa. 188; Bachler v. Cooper, 150 Pa. 533; Moore v. Carter, 146 Pa. 492; Wyckoff v. Artley, 142 Pa. 467; Sticker v. Overpeck, 127 Pa. 446.

*William H. Staake*, for appellee.—Whether a contract be entire or severable depends more on the intention of the parties as gathered from the whole instrument than upon the specific method of performance or payment: Quigley v. De Haas, 82 Pa. 273; McCrelish v. Churchman, 4 Rawle, 35.

Where the covenants are mutual and dependent, one party cannot call upon the other to perform his part of the contract without having actually performed or tendered performance of his own: Cassell v. Cooke, 8 S. & R. 268.

OPINION BY MR. JUSTICE FELL, May 28, 1896:

The plaintiff agreed to do the carpenter work necessary in the erection of a number of houses for a fixed price, and to accept in part payment thereof a conveyance of two of the houses, the balance to be paid in money. Some payments were made as the work progressed. This suit was brought to recover in money the whole of the price agreed upon, less the payments made during the progress of the work. The plaintiff alleged that the houses were not completed and conveyed, and that the whole of the money consideration was not paid. The dispute as to the amount of the payments was referred to the jury, and no question relating to them is before us. The learned judge, being of opinion that the plaintiff had not shown an adequate reason for refusing to take the houses as agreed, instructed the jury that there could be no recovery except for the balance due in money under the terms of the agreement.

It was not disputed that a conveyance of the houses was tendered to the plaintiff. He had some months before taken possession of one of them, sold it, received a part of the purchase money and put the vendee in possession, and he had exercised acts of ownership over the other house. There was no testimony to show that the houses were not substantially completed; the defects were in trivial matters and could have been

remedied at a trifling cost. When the defendant offered to convey the houses he also offered to pay the balance of the money which appeared by a written statement signed by the plaintiff to be due, less an amount which he claimed for lumber sold to the plaintiff. The plaintiff alleged that there was an error in the statement which he had rendered, and that the lumber had been given to him by the defendant. Practically the dispute was about these two matters. A refusal to pay the disputed balance was not such a breach of the contract by the defendant as to justify the plaintiff in refusing to take the houses and to entitle him to a recovery of the whole consideration in money. He had misled the defendant by the statement which he had rendered, and the counterclaim for the price of the lumber was made in good faith. As the case was treated at the trial and submitted to the jury the verdict does not estop the plaintiff from claiming a conveyance of the houses, and this under the testimony is all he is entitled to.

The judgment is affirmed.