## Gibbs *v.* School District of Girardville.

*Building contract—Architect—Error in plans—Alterations.*

A contract for the building of a schoolhouse, provided that the work was to be done and materials furnished in accordance with the plans and specifications prepared by the architect "acting for the purposes of the contract as agent of the said owners;" it further provided that no alterations should be made in the work as shown by the drawings and specifications "except upon a written order of the architect," and that the value of the alterations "shall be computed by the architect" and added to or deducted from the contract price. In the event of dissent from his award by either party, the valuation of the work was to be referred to arbitra-

tors. Errors in the plans were to be referred to the architect for correction, before proceeding with the work. After considerable work had been done the contractors discovered an error in the foundation plans and notified the architect in writing to correct it, and also gave notice to the school board that it would be held responsible for the loss and delay. The architect notified the contractors of certain defects in the work and called upon them to rebuild parts of the walls. An effort was made by the contractors and the school board to adjust their differences, but nothing was accomplished, and the contractors notified the school board that it had committed a breach of the contract, that its action was taken by them as a rescission of the agreement and an action would be brought for its breach. The contractors abandoned the work and brought an action for work done and materials furnished in accordance with the contract, setting up that the architect was incompetent and had furnished plans improper and impossible for the performance of the work; and that the school board had refused to furnish proper plans and specifications and thereby committed a breach of the contract and prevented plaintiffs from performing their work. *Held,* (1) that the plaintiffs had no right to rescind the contract because of the alleged errors in the plans and specifications, but that it was their duty to have brought them to the attention of the architect and requested their correction. Upon a refusal to comply with this request then the contractors could have rescinded the contract; (2) that a complete remedy for any additional work occasioned by a change of the plans was provided by the contract, and should have been pursued before the contract could be rescinded and a recovery had in this action; (3) that to enable the plaintiffs to recover they must aver and prove that the work was done and materials furnished substantially according to the plans and specifications, and it being conceded on the trial that the foundation walls did not comply with the requirements, they could not recover; (4) that the plaintiffs could not justify their failure to comply by proving that the architect had orally waived certain provisions of the contract; (5) that the architect had no power to annul or set aside the contract and was the agent of the school board to see that it was enforced; (6) that alterations could only be made in the manner provided by the contract, which was upon a written order of the architect; (7) that the changes made by the contractors in substituting one kind of stone for another in the foundation walls and "lap binders" for "headers" were "alterations" within the meaning of the contract, and not being authorized in writing the contractors were not justified in making them; (8) that binding instructions should have been given for defendant.

Argued Feb. 14, 1900.   Appeal, No. 29, Jan. T., 1900, by defendant, from judgment of C. P. Schuylkill Co., July T., 1896, No. 322, on verdict for plaintiff in case of James Gibbs and Curtis S. Brooks, trading as Brooks & Gibbs v. School District of Girardville.   Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ.   Reversed.

Assumpsit on quantum meruit for work performed and material furnished in the construction of a basement of a schoolhouse, prior to the rescission of a contract between the plaintiffs and defendant to construct the schoolhouse.    Before HENNING, J.

The facts are fully stated in the opinion of the Supreme Court.

The defendant presented, inter alia, the following point:

20. That under all the evidence in this case the verdict of the jury must be for the defendant.    *Answer :* This we decline. The question is one of fact for you to determine.

Verdict and judgment for plaintiff for $3,411.21.    Defendant appealed.

*Error assigned* among others was above instruction, quoting it.

*John F. Whalen* and *John W. Ryon*, with them *MacHenry Wilhelm* for appellant.—An officer of a municipality cannot bind his principal beyond the scope of his authority, nor within it, except in strict conformity therewith; and not only the extent, but the manner of the execution of the authority must have been such, and only such as the authority conferred warranted: Malone v. Philadelphia, 147 Pa. 416.

*James Scarlet*, with him *George W. Ryon*, for appellees.—A contractor who is prevented by the other party from performing a contract is entitled to recover damages for the breach of the agreement: Emig v. Spatz, 155 Pa. 642; Hall v. Rupley, 10 Pa. 231; White v. Braddock Borough School Dist., 159 Pa. 201; Murphy v. Liberty Nat. Bank, 184 Pa. 208; Martin v. Shoenberger, 8 W. & S. 367; Hartman v. Meighan, 171 Pa. 46.

The architect in this case was a party to the contract, and was made the express and authorized agent of the school board by the contract.    It cannot be pretended that the contractors undertook tasks which might be rendered nugatory by the arbitrary and unreasonable refusal of the architect to act: Vulcanite Paving Co. v. Phila. Traction Co., Supreme Ct. of Pa. 8 Atl. Repr. 777.

The plaintiff was entitled to recover in this action for the

work and labor done and the value of the materials furnished:
Hall v. Rupley, 10 Pa. 231; Del. & Hudson Canal Co. v. Dubois, 15 Wendell, 87.

OPINION BY MR. JUSTICE MESTREZAT, April 23, 1900:

By an agreement dated March 18, 1896, the plaintiffs contracted to erect for the defendant a school building in the
borough of Girardville, in Schuylkill county, for the sum of
$13,238, "subject to additions and deductions as provided"
in the contract. The contractors were to provide the materials
and perform the work in accordance with the plans, drawings,
details and specifications prepared by the architect. This work
was to be done and the materials were to be furnished by "the
contractor under the direction and to the satisfaction of the
board of school directors and P. Rudrauff, architect, acting for
the purposes of the contract as agent of the said owners."
Article 2 of the contract provides that the architect shall furnish the contractors with such other drawings or explanations
as may be necessary to detail and illustrate the work to be
done, and requires the contractors to conform to the same as
part of the contract so far as they may be consistent with the
original drawings and specifications. Article 3 is as follows:
"No alterations shall be made in the work shown or described
by the drawings and specifications except upon a written order
of the architect, and when so made, the value of the work
added or omitted shall be computed by the architect and the
amount so ascertained shall be added to or deducted from the
contract price. In the case of dissent from such award by
either party hereto, the valuation of the work added or omitted
shall be referred to three disinterested arbitrators, one to be appointed by each of the parties to this contract and the third by
the two thus chosen; the decision of any two of whom shall be
final and binding, and each of the parties hereto shall pay one
half of the expenses of such conference." Article 4, provides
that the contractors "shall, within twenty-four hours after receiving written notice from the architect to that effect, proceed to remove from the grounds or buildings, all materials
condemned by them, whether worked or unworked, and to take
down all portions of the work which the architect shall by like
written notice, condemn as unsound or improper, or as in any

way failing to conform with the drawings and specifications."
Article 5 provides that if the contractors shall fail in any re-
spect to prosecute the work with diligence or in the perform-
ance of any part of the agreement, and being so certified by the
architect, the owners may, after five days' written notice, pro-
vide labor and materials and deduct the costs thereof from any
money due the contractors, and if the architect shall certify
that such failure is sufficient ground for such action, the own-
ers may terminate the employment of the contractors and com-
plete the contract at their expense.    The certificate of the arch-
itect as to the expense incurred by the owners is conclusive
upon the parties.    The specifications require the contractors to
" lay up all foundation walls and piers to grade line with best
large mountain quarry stone of sufficient size beds and builds to
make a first class piece of masonry in all respects," and " no
less than fifteen per cent of entire stones to be headers, passing
entirely through the walls."    In the specifications it is provided
that " if any errors are found on the plans, they must be referred
to the architect for correction before proceeding with the work."

A few days after the contract was signed by the parties,
the contractors began work.    The old building on the lot was
removed, excavations made, and the foundation walls were built.
The work proceeded until the contractors discovered an error
of six feet in the walls on the foundation plans of the building.
On May 25, 1896, within a few days after the mistake had been
discovered, the contractors notified the architect in writing of
the error, and requested him to correct it before they proceeded
with the work.    On the following day a notice was sent the
school board that an error had been discovered and that the
architect had been requested to correct it.    The contractors
also notified the school board in writing about June 1, 1896,
that by a mistake of the architect, an error had been discovered
in the walls of the building; that by reason thereof their work
on the building had been delayed over a week, and that they
would hold the defendant responsible for the loss and expense
occasioned by the delay.    Under objection the court admitted
a paper offered by the plaintiffs, dated May 12, 1896, signed by
the contractors and witnessed by Thomas L. Evans, in which
the contractors acknowledge that certain broken range stone
work was omitted by them, and in lieu thereof agreed to cement

the wall or, on failure to do so to the satisfaction of the architect, that $150 should be deducted from money due them, and such change in the wall should not affect the contract.   About June 11, 1896, the contractors notified the school board that it had committed a vital breach of the contract, and that such conduct on the part of the defendant was taken by the contractors as a rescission of the agreement, and that an action would be brought for a breach thereof.   This notice also acknowledged the receipt of defendant's notice to remove portions of the wall, denied that the contractors had not erected the walls according to the plans and specifications, also denied that the removal of the wall was an "alteration" as provided for in the contract, and set forth wherein the plans and specifications were alleged to be defective.

The architect notified the contractors in writing on May 17, 1896, to remove all the stone not up to the standard, and to carry out broken range work on the rear of the building above ground within twenty-four hours.   On the following day he wrote the contractors a complaining letter in which, while admitting he gave them permission to use surface stone instead of quarried stone, he says he is compelled to resort to extreme measures to prevent the use of inferior stone in the foundation walls and if such conduct was persisted in, he would refuse to grant them a certificate.   By a written notice of June 8, 1896, the architect called the contractors' attention to the fact that fifteen per cent of the stone and the broken range work did not pass entirely through the walls as called for in the specifications, and notified them to remove such parts of the walls as did not conform to the specifications and to rebuild the same at once. By a notice from the architect of the same date, the contractors were required to begin the work of the removal and restoration of the walls within twenty-four hours, and their attention was directed to article 4 of the contract.   To this notice was attached a blue print showing the portions of the foundation walls to be removed.   On or about June 16, 1896, the school board, in a written notice, reciting the refusal of the contractors to comply with the notices given them by the architect and their abandonment of the work, notified the contractors to begin the work referred to in said notice within ten days as provided in article 5 of the contract.

The contractors abandoned the contract, pursuant to their notice to the school board of June 11, 1896, and on June 22 brought this action. In the statement, they aver that their claim is for $5,000 for work done and materials furnished in pursuance of, and in accordance with, the contract; that the architect was incompetent and furnished plans and specifications improper and impossible for the performance of the work; that the defendant refused to furnish proper plans and specifications, and thereby committed a breach of the contract and prevented plaintiffs from performing the work.

On the trial of the cause in the court below, the defendant resisted a recovery on the grounds: (1) that the contract furnished a remedy for any defect in the plans and specifications and that the plaintiffs were compelled to resort to the mode of procedure therein provided, before they could rescind and abandon the contract, and (2) that the plaintiffs had not complied with the terms of the contract in the performance of the work done and materials furnished. Special reference to the numerous assignments of error is unnecessary, as a determination of these questions will dispose of the case.

1. Soon after the error in the length of the foundation walls had been discovered by the contractors, they gave notice of the fact in writing to the architect and the school board. As recited in the notice, this was done in accordance with the instructions in the specifications, which required notice of the error to be given before the contractors proceeded with the work. At this time, so far as the evidence discloses, no other mistakes had been found on the plans; at least the contractors had given notice of none. This mistake, it is conceded, was unknown to the architect or school board. After the contractors had given notice of the error, an attempt was made by them and the school board and its architect to adjust their differences arising out of the mistake, but nothing was accomplished. The architect then, as required by the contract, gave the contractors the notices of June 8. They refused to comply therewith, and on June 12, notified the school board of other alleged defects in the plans of parts of the building not yet constructed, and that they treated its conduct as a rescission of the contract, and would bring an action for the breach.

The learned court below held that there was no provision in

the contract for compensating the contractors for work done by reason of the error of the architect and that, therefore, there was no remedy provided in the contract for correcting the error discovered in the foundation walls. This was evidently not the view of the contractors or their counsel when they gave the architect notice of the mistake. That notice assumes that the specifications afford a remedy by referring to and being given pursuant to their requirements. The notice of the architect was in writing and required the changes to be made according to a plan submitted therewith. A comparison of this plan with the original plans and specifications would have at once disclosed the fact whether they were the same or different. If the plan accompanying the notice was different, then it is clear that there was an "alteration" required by the architect in his "written order," for which redress for the contractors was provided in article 3 of the contract. The clause in the agreement that the errors found on the plan must be referred to the architect before the work was proceeded with, in no way conflicts with the provisions of article 3. That clause merely prevented the contractors from doing work which they knew should not be done and thereafter compelling the owner to pay for it. It does not deprive the contractors of compensation for work performed by reason of alterations or changes made pursuant to written instructions of the architect. The cause or necessity of such changes is immaterial so far as the right of the contractors to remuneration for the work done is concerned.

The contractors have no standing to insist upon the additional errors set forth in their notice of June 11, as a reason for the rescission of the contract. If they desired to avail themselves of these mistakes, it was their duty to have brought them to the attention of the architect and requested that the plans be corrected. If the architect and school board had refused to comply with the request, the contractors could then have rescinded the contract. Instead of pursuing this orderly course and the one required by the agreement of the parties, the contractors attempt to relieve themselves of their covenants in violation of the agreement, and at the expense of the school board. A complete remedy for any additional work required of the contractors in the erection of this building occasioned by a change of the plans, is provided by the terms of the agreement

and must be pursued before they could rescind the contract and recover in this action.

2. This is an action of assumpsit for the work performed and material furnished prior to the rescission of the contract. To enable the plaintiffs to recover they must aver and prove that the work was done and materials were furnished substantially according to the plans and specifications accompanying and made part of the contract. The specifications provide, as we have seen, that all foundation walls and piers shall be laid up "to grade line with best large mountain quarried stone of sufficient size beds and builds to make a first class piece of masonry in all respects," and further that "no less than fifteen per cent of entire stones to be headers passing entirely through the walls." It was conceded on the trial that the contractors had not complied with these requirements in the specifications. As an excuse therefor, it was claimed and, against the defendant's objection, proved that the architect had orally waived these provisions of the contract. The learned court below held that the architect had the authority by parol to waive this part of the contract or to make a new contract in relation thereto. This ruling of the learned judge was apparently based upon his construction of that clause of article 1 of the contract in which the architect is referred to as "acting for the purposes of the contract as agent of the said owners."

We cannot agree with the learned judge in his interpretation of the contract. On the contrary, we think that the architect was the agent of the defendant to see that the contract was enforced, and that he must act according to and within the terms of its provisions. His powers must be exercised in conformity with and not contrary to the purpose and intention of the parties as expressed in the agreement. It will not be presumed that the school board intended to clothe the architect with an authority which would permit him to annul or set aside the contract. Such a construction would not be reasonable and, in our opinion, is not supported by the language of the agreement.

The parties stipulated in their contract the manner in which the architect might exercise his authority requiring alterations to be made in the work, and in no other way or manner could such alterations be made so as to bind the defendant. In other words, this part of the contract is as obligatory as any

other part of it and neither party, without the other's consent, is at liberty to violate it.

There is every reason why all orders of an architect requiring the work to be done in conformity with a modification or change in the plans and specifications should be in writing. It prevents misunderstandings and litigation between the parties by substituting written and definite for parol and uncertain evidence as to the instructions given the contractors by the architect. There can be no better illustration of the necessity of a strict compliance with a building contract than the case at bar. Had the contractors demanded of the architect written authority for the changes made by them in the work done and materials furnished instead of acting on the loose and uncertain declarations, alleged to have been made in conversations with him, this expensive and lengthy litigation could have been avoided. The contractors, however, saw proper to act in this matter in direct opposition to the plain requirements of their contract, and they must accept the responsibility which they thus assumed.

Recurring to article 3 of the contract, it is seen that no alterations can be made in the work shown or described by the drawings and specifications, except upon a written order of the architect. The changes made by the contractors in substituting mountain surface stone for mountain quarried stone and " lap binders " for " headers " in the foundation walls were clearly " alterations " within the meaning of this article and, as they were not authorized in writing, the contractors were not justified in making them.

That the architect and contractors believed that the latter had no authority to make changes in the work without the architect's written order is apparent from the numerous written notices which passed between them. They would have been unnecessary if the architect could have verbally directed or permitted alterations in the work and materials required by the contract. The written notices of the architect, who was dead at the time of the trial, are significant as tending to contradict the testimony of the plaintiffs that he orally directed any changes in the construction of the foundation walls.

The plaintiffs recognizing the necessity of a compliance with the contract in so far as they did the work before they

could maintain this action, aver in the statement " that the work done and walls so erected were done in accordance with the plans and specifications furnished for said foundations." As we have seen, it is conceded that this averment is not supported by the evidence, but on the contrary, the specifications were departed from in the particulars mentioned.

The court below should have instructed the jury, as requested by defendant, that under all the evidence the plaintiffs were not entitled to recover.

The judgment is reversed.