# Turner Concrete Steel Co., Appellant, *v.* Chester Construction & Contracting Co.

*Contracts—Construction—Payment—Failure to pay installments —Disputed items—Rescission of contract—Case for jury—Instructions—Appeals.*

1. In contracts, such as building contracts, where the work is spread over a considerable period of time, and large sums of money must necessarily be expended by the contractor, and payments are based on the amount of work performed, the covenant to perform is dependent on the covenant to pay. A failure to liquidate installments as they come due may justify the rescission of the contract and discontinuance of the work.

2. But in a case where a contractor lets out a portion of the contract to a subcontractor, and the contractor has substantially complied with the contract to pay, and in good faith has liquidated the sum which he believes to be due, the subcontractor is not justified in abandoning the operation.

3. Where the subcontractor, on receiving a large sum, which the contractor insisted was the entire balance due on an installment, stops all work within a few hours, without further notice or demand, and six days later declines to make a statement for verification, although immediate liquidation of any charge unpaid was promised, the question whether the offer to then pay was reasonable, is for the jury, even if there was no real dispute as to the balance.

4. Where, in such case, a verdict is for defendant, the correctness of the instruction as to the measure of damages is immaterial.

Argued May 3, 1921. Appeal, No. 413, Jan. T., 1921, by plaintiff, from judgment of C. P. No. 3, Phila. Co., June T., 1918, No. 5564, on verdict for defendant, in case of Turner Concrete Steel Co. v. Chester Construction & Contracting Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit to recover a balance alleged to be due on a construction contract. Before DAVIS, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were various instructions, and (40) entry of judgment on verdict.

*Thomas F. Gain,* with him *Arthur S. Minster* and *Brown & Williams,* for appellant.—Defendant's legal obligation to pay plaintiff according to the terms of the contract would not be satisfied by a mere belief that it had so paid. The injection of the question of the good faith of the parties raised an improper issue.

It was error to submit to the jury the question of substantial payment: Harton v. Hildebrand, 230 Pa. 335.

Under the undisputed proofs and under defendant's admissions the plaintiff was entitled to binding instructions in its favor: Lonzer v. R. R., 196 Pa. 610; Macneir v. Wallace, 252 Pa. 323; Catasauqua Natl. Bank v. Miller, 60 Pa. Superior Ct. 220; Berkowitz v. Mfg. Co., 68 Pa. Superior Ct. 559.

*Owen J. Roberts,* with him *Robert T. McCracken,* for appellee.—Where a building contract fails to specify how the value of the work is to be ascertained for the purpose of fixing the amount of current estimates, the parties must agree on some method of ascertainment, and if they do so agree they are both bound thenceforth to conform to the method so adopted: Guerini Stone Co. v. Const. Co., 240 U. S. 264.

Plaintiff acted unreasonably: Lynch v. Gas Co., 165 Pa. 518; Burchfield v. Alpha Process Co., 45 Pa. Superior Ct. 254.

OPINION BY MR. JUSTICE SADLER, July 1, 1921:

The defendant company entered into a construction contract, and afterwards employed plaintiff as subcontractor, by writing dated April 26, 1917. This agreement provided that certain specified work should be done for the lump sum of $650,000 with additional allowance for increase in cost of labor. Later, by supplementary arrangements as to extras, the contract price was advanced to more than $800,000. It was stipulated that estimates of the work completed should be furnished on the first of each month, and that eighty-five per cent of the sums found to be due should be paid on or about the 20th day following, and that "the subcontractor [should] be privileged to stop work if payments [were] not made as provided for." No manner of fixing the value of the labor and materials used during the thirty-day period had been suggested in the agreement, and this was the subject of later negotiation between the parties, which resulted in an understanding as to the method by which

the accounts should be submitted and vouched by the defendant before inclusion in the monthly estimates. A separate agreement covered the payment for necessary construction steel. In April of 1917, the plaintiff, complaining of its need for larger payments, received permission to add to its current account, upon which its percentages were based, the sum of $25,000, as cost of plant. This was, in effect, an advance, as payments were made by the defendant to it at the stipulated rate, in the estimate for May. It was understood this should be repaid by reducing the balance for work done by $5,000, in each of the following five months. On August 20th, there remained unreturned $10,000 to be withdrawn from the totals of August and September.

On August 1st, the estimate for July was furnished to defendant. It made a claim of $64,385.33 upon the main contract, and for extras, of which a list was given, aggregating $18,602.02. By August 28th, there was paid on account of the plaintiff's claim $82,434.44,—a slightly less sum than the amount of the bills rendered, but certain of the items therein set forth were in dispute. The plaintiff maintained that the payments, other than those made on the main contract, were not on account of the items billed as extras on August 1st, but for sums due for additional labor, and insisted that at least $11,000 was payable to it on August 1st. On the other hand, defendant contended,—admitting all disputed claims made by plaintiff,—there was not due more than $1,200 to $1,300, on the main contract, and $2,900 for extras, against which was the right to the monthly deduction of $5,000, on account of plant, under the April agreement, which sum it claimed should be increased to $10,000 as of August 28th, when the plaintiff abandoned the contract.

Prior to August 20th, plaintiff advised defendant there would be owing on that date a larger sum, made up of other charges, not appearing in the monthly estimate, payment of which was demanded. On August 23d, a credit of $20,000 was acknowledged, and it then insisted

upon payment, by August 26th, of an indefinite sum for extras, as well as for damages for interference with work, and retained percentages, to the last of which items it clearly had no present right. At this time, $25,000 additional was paid. This was acknowledged with a demand that the balance in full be liquidated on the day following,—extended to the 28th,—but not indicating the amount claimed. The defendant sent its check for $37,434.44 about noon of the 28th, stating that it understood this to be the full balance due. Without pointing out what sum was still claimed to be owing, or giving notice of any kind, plaintiff, on the same afternoon, withdrew its men from the operation and abandoned the contract. Six days later, when an offer was made to pay at once any amount which could be shown to be unliquidated, plaintiff refused to submit its calculation for inspection and verification. It brought this suit to recover the balance due for labor and materials to the date when it ceased operations, the retained percentages, and damages.

At a trial lasting three weeks, a large amount of testimony was taken, covering more than one thousand printed pages. The effort was made, on the one side, to show some balance was in fact due on August 20th, and, on the other, to prove the contrary. Evidence was received so that it might be determined whether various items were payable at the time in question, but, in our view of the case, it is unnecessary to consider these claims in detail. The learned court below submitted the matter to the jury, and, in effect, charged if the defendant had substantially complied with its contract to pay, and in good faith liquidated the sum which it believed to be due, the plaintiff was not justified in abandoning the operation. In so holding, no error was committed.

In contracts such as this, where the work is spread over a considerable period of time, and large sums of money must necessarily be expended by the contractor, and payments are based on the amount of work per-

formed, the covenant to perform is dependent upon the covenant to pay. A failure to liquidate installments as they come due may justify the rescission of the contract, and the abandonment of the work. "In such cases, a substantial compliance as to advance payments is a condition precedent to the contractor's obligation to proceed": Guerini Stone Co. v. Carlin Construction Co., 248 U. S. 334, 345. "But, of course, the builder is not entitled to rescind and abandon the contract unless there has been some wrongful act or default on the part of the owner, as where the delay in payment is a reasonable one or the amount due is disputed." 9 C. J. 726. A like rule finds sanction in Worden v. Connell, 196 Pa. 281, 284, where this court approved a charge to the jury in which it was instructed that defendant would not be liable if he had substantially complied with the contract, and did not, without excuse, withhold payments justly due. Of course, if there is no honest dispute, the contractor may rescind, if in so doing he acts reasonably. Such was the situation in Harton v. Hildebrand, 230 Pa. 335, where the claim had been admitted in writing to be correct, and was long overdue. On the other hand, where it appears the builder is not acting in good faith, the contrary will be held: Grunwald v. Hahn, 176 Pa. 37; Gibbs v. Girardville School District, 195 Pa. 396. An examination of the many authorities in other jurisdictions, where the right to abandon the contract has been upheld, will show that there was no question of the sum due, and, usually, it appeared the owner had become insolvent or expressed an intention not to pay: 2 Williston on Contracts 1626, note 67.

In the present case, there was an apparently bona fide contention as to the sum due on August 20th. Payment on that day was waived by the acts of the parties,— even if then required under the contract, which used the words "on or about,"—until August 28th. The plaintiff, upon receiving a large sum, which defendant stated was the entire balance, stopped all work within a few

hours, without further notice or demand setting forth the amount which it claimed as due. Six days later, it declined to submit a statement for verification, though immediate liquidation of any charge unpaid was promised. Whether the offer to then pay was reasonable, even if there was no real dispute as to the balances, might well, in itself, have been a question for the jury: United States F. & G. Co. v. Grace C. Co., 263 Fed. 283, 293.

Though the right to rescind in certain cases will be upheld, yet reasonable time must be given to comply with the demand before the contract work is abandoned: Cranford Co. v. New York, 134 N. Y. S. 839. "Doubtless a day's delay in the payment of an installment will not justify permanent cessation of work, but it seems that the contractor might refuse to perform further until payment was made, and if it was delayed for a long and unreasonable time, might refuse to go on with the work altogether": 2 Williston on Contracts 1626. It is to be observed that the privilege given the subcontractor in the present case was the stopping of work for nonpayment of a monthly estimate. It could undoubtedly have ceased operations temporarily if overdue demands remained unsatisfied, and, after a reasonable time and proper notice, ended construction entirely if the contractor failed, without proper excuse, to fairly comply with his promise; but it cannot be said that the abandonment of a contract of the magnitude here shown, within a few hours of a large payment, was justifiable. The jury has found the obligation of defendant was substantially performed, and its action in disputing certain items was in good faith. In view of the verdict, the correctness of the instructions as to the measure of damages complained of becomes immaterial: Lautner v. Kann, 184 Pa. 334. No reversible error is found in the charge, or the answers to the points, and the assignments of error are therefore overruled.

The judgment is affirmed.