**Rossotti Lithograph Corporation v. Townsend**

*Alan B. Goodman,* for plaintiff.

*Lewis R. Long,* for defendant.

PER CURIAM, August 24, 1970.—This is an action in assumpsit to recover the balance due upon a written contract under which plaintiff manufactured and delivered to defendant a carton sealing machine and cartons to be used by defendant in the sale of frozen "pierogies." Plaintiff averred complete performance on its part. Defendant denied complete performance by plaintiff and counterclaimed for consequential damages and return of her down payment. Consequential damages claimed by defendant consisted of $3,250, representing depreciation of two refrigerated trucks purchased for marketing the frozen pierogies, and $10,000 loss of customers and trade, which she attributed to plaintiff's breach. The return of the down payment amounted to $3,850.

The bases of the counterclaim were:

1. That the carton did not seal properly because plaintiff did not apply a sufficient amount of "hot melt adhesive" to the end flaps of the cartons, and

2. That the carton sealing machine was defective in that it did not seal the cartons, the purpose for which it was purchased.

The jury returned a verdict in favor of Rossotti Lithograph Corporation, plaintiff, in the amount of $8,737.27, and also in favor of Rossotti Lithograph Corporation, plaintiff, in the counterclaim.

Defendant filed a motion for new trial and al-

though 13 reasons were assigned, only two reasons were pressed at the arguments:

1. That the court's charge limiting defendant's counterclaim to a recovery of her down payment was reversible error, and

2. The court refused to read point for charge no. 4.

As to the first reason, paragraph no. 21 of the conditions of sale reads as follows:

"In the event of the breach of this order by the Seller, its liability to the Buyer for damages shall be limited (1) to the amount paid by the Buyer to the Seller in the case of goods already paid for: (2) to the amount of any increase in cost of goods on the purchase thereof by Buyer to replace those which Seller has failed to deliver."

Appellant contends that this paragraph of the conditions of sale is unconscionable and should have been stricken under section 2-302 of the Uniform Commercial Code of April 6, 1953, P. L. 3, 12A PS §2-302, by submission of the question to the jury.

It is further contended that defendant should have been allowed to present testimony of her consequential damages. Section 2-719(3) of the Uniform Commercial Code, 12A PS §2-719(3), provides as follows:

"(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not": Reenacted October 2, 1959, P. L. 1023, sec. 2.

Section 2-302 of the Uniform Commercial Code provides as follows:

"(1) If the court as a *matter of law* finds the contract or any clause of the contract to *have been* unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the

remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination": Reenacted October 2, 1959, P. L. 1023, sec. 2.

Section 2-302 clearly indicates that it is a matter of law and not for the jury to determine whether the clause is unconscionable. Comments 2 and 3 prepared by the National Conference of Commissioners on Uniform State Laws and the American Law Institute resolve this question as follows:

"2. Under this section [2-302] the court, in its discretion, may refuse to enforce the contract as a whole if it is permeated by the unconscionability, or it may strike any single clause or group of clauses which are so tainted or which are contrary to the essential purpose of the agreement . . .

"3. The present section is addressed to the court, and the decision is to be made by it. The commercial evidence referred to in subsection (2) is for the court's consideration, not the jury's. Only the agreement which results from the court's action on these matters is to be submitted to the general triers of the facts."

These comments may be consulted in the construction and application of the act as provided in section 1-102(3)(f).

Furthermore, the unconscionability of a contract is an affirmative defense and should have been raised in the answer under new matter: Fredericks v. Hamm, 45 D. & C. 2d 687 (1968). Even if defendant

had offered testimony as to the unconscionability, it would not have been accepted because the defense had not been pleaded.

Appellant's other main argument is that the court refused to charge the following requested point:

"4. If the jury finds from the evidence that the defendant ordered and purchased from the plaintiff cartons for the packaging and sale of frozen pierogies, which cartons were designed and specifically manufactured by the plaintiff for the defendant, which packages included the placing of hot melt adhesive to the end flaps so that said cartons could be properly sealed and sold, and at the same time the plaintiff sold to the defendant a sealing machine for the specific purpose of packaging and sealing these cartons containing the frozen pierogies, attached to this transaction by operation of law is an implied warranty that these cartons and the sealing machine are reasonably fit for the general purpose for which they were sold."

In essence, defendant's point no. 4 asked the court to charge the applicability of the code's section 2-314, implied warranty of merchantability, to the instant case; i.e., that the cartons and sealing machine are fit for the ordinary purposes for which such goods are used. See section 2-314(2)(c). The court effectively stated the essence of this warranty when it charged, ". . . and if you find that there is a breach of contract here by the plaintiff, and if you find the machine did not do the job it was warranted to do, and if you find these boxes did not stick because of something the plaintiff did not do, then you can find for the defendant in the amount of $3,850.00." Coincidentally, after denying the reading of point no. 4 the court next stated to the jury, "Some of these denials are because the Court has already covered these points in its charge, and not because the defendant was wrong

in requesting them." Further dissipating defendant's argument is the fact that the court affirmed and read defendant's requested points nos. 5 and 6. It appears defendant intended that these two points cover the code warranty of fitness for a particular purpose. Nevertheless, a reading thereof could well lead one to conclude that these two points substantially conveyed to the jury the import of the refused point no. 4.

Finally, instructions on the question of damages become immaterial when a verdict is rendered in favor of plaintiff on the main issue. And an error in instructing on the measure of damages is not a ground for reversal where the jury has found no liability exists: 2 P. L. Encyc. Appeals 668, §493; Turner Concrete Steel Co. v. Chester Construction & Contracting Co., 271 Pa. 205 (1921), 114 Atl. 780.

### ORDER OF THE COURT
### EN BANC

And now, to wit, August 24, 1970, defendant's motion for a new trial is denied and dismissed.