ERNST, Trustee, Appellant,

v.

**OHIO DEPARTMENT OF ADMINISTRATIVE SERVICES et al., Appellees.**

[Cite as *Ernst v. Ohio Dept. of Adm. Serv.* (1990), 69 Ohio App.3d 330.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–1263.

Decided Sept. 11, 1990.

*Alfred William Schneble III,* for appellant.

*Anthony J. Celebrezze, Jr.,* Attorney General, *Velda Hofacker* and *Monica Stralka Forman,* for appellees.

WHITESIDE, Judge.

Plaintiff-appellant, Herbert Ernst, Jr., Trustee in Bankruptcy for Certified Electric, Inc., appeals from a judgment of the Ohio Court of Claims finding for defendant-appellee Ohio Department of Administrative Services ("defendant") and raises the following assignments of error, which were labeled as argument:

"I. The refusal to pay progress payments by the appellee/State of Ohio infringed upon the appellant/debtor-in-possession's ability to reorganize pursuant to its Chapter 11 Bankruptcy petition.

"II. The refusal to move for relief from Bankruptcy Court denied appellant/debtor-in-possession's rights to funds, reorganization and assumption of the pending contract all in violation of the federal stay.

"III. The refusal to serve the statutory notice under the Ohio Revised Code Section 153.17 led to a wrongful termination of all of appellant's rights to the contract by the appellee.

"IV. The refusal to escrow payments under the Ohio Revised Code Section 153.63 and 1311.28 led to the appellee unfairly bootstrapping its position ahead of all creditors of the appellant's bankrupt estate."

In June 1984, Certified Electric, Inc. ("debtor") entered into a contract with defendant to install and complete all of the electrical work for a construction project located at the Southern State Community College. Among other things, the contract provided that the debtor could receive periodic progress payments upon estimates of labor performed and materials supplied which are approved by the architect or engineer. The contract further provided in Article 12 that "[p]ayment shall be made within thirty days from the date of approval of contractor's payment request by the Deputy Director of Public Works."

Although there is some indication that there were problems between debtor and defendant, the trial court found that, as of March 1985, the electrical

installation of the project was in compliance with the schedule. Furthermore, debtor had submitted eight draw requests, all of which had been paid by March 22, 1985. Draw request nine was also paid, but not for the full amount. On May 24, 1985, draw request ten was initiated by debtor but not received by defendant until sometime after June 26, 1985, due to mailing problems. Defendant never paid the amount requested.

On June 7, 1985, debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Draw request eleven was initiated by debtor on June 13, 1985, and although received by defendant was never paid by defendant. On June 25, 1985, debtor left the job, ceasing all work, and prepared a final draw request on June 27, 1985, which was never submitted.

Following debtor's departure from the job site, defendant sought to terminate the contract with debtor on the grounds that debtor had breached by abandoning the project. Another electrical contractor was eventually awarded the contract to complete the project on August 5, 1985. As a result of these occurrences, defendant claims damages which it "set off" against the debtor's progress payment requests ten and eleven.

Originally, debtor filed a complaint in the bankruptcy court alleging that defendant was wrongfully withholding property belonging to the debtor's estate. However, on July 23, 1987, the debtor filed the present action in the Court of Claims, followed by the dismissal of the complaint in the bankruptcy court on August 18, 1987.

During the pendency of this action, debtor's Chapter 11 petition was converted to a Chapter 7 liquidation proceeding on March 25, 1986, pursuant to Section 1112, Title 11, U.S.Code. As a result, plaintiff, Herbert Ernst, Jr., was appointed as trustee and as such has the capacity to sue and be sued. See Section 323(b) and Bankr.R. 6009. Thus, plaintiff, as trustee, is the proper party to continue this action.

On September 27, 1989, the trial court rendered its decision finding that plaintiff, as trustee of debtor, was not entitled to any progress payments from defendant under any theory of recovery. An entry was filed the same day reflecting the court's decision, from which plaintiff timely appeals.

Although defendant did not file a notice of appeal and, thus, may not assert an affirmative cross-assignment of error, defendant does raise an issue of jurisdiction, which we will address first. Defendant contends that the state or its agencies may not be sued in the Court of Claims for actions based upon federal law, but only those actions relating to state law. Defendant further maintains that the waiver of sovereign immunity is very narrow. As defen-

dant perceives this action as one arising within the Bankruptcy Code, albeit federal law, defendant concludes the claims court lacks jurisdiction in this case.

Initially, we note that, under defendant's analysis, no court would have jurisdiction to hear plaintiff's claim. The bankruptcy court lacks jurisdiction over a state or its agencies unless Section 106(a), Chapter 11, U.S.Code applies, which states as follows:

"A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose."

It is undisputed that defendant did not file a claim in the bankruptcy court and, therefore, Section 106(a) does not apply.

The Court of Claims, on the other hand, clearly has jurisdiction to decide this matter. While defendant is correct that R.C. 2743.02(A)(1) controls the extent to which the state and agencies have waived sovereign immunity, that section further provides: " * * * To the extent that the state has previously consented to be sued, this chapter has no applicability."

R.C. 153.12(B), which governs the award and execution of contracts involving a public improvement, provides in pertinent part:

"(B) In the event of a dispute between the state and a contractor concerning the terms of a public improvement contract let by the state or concerning a breach of the contract and after administrative remedies provided for in such contract between the state and the contractor are exhausted, the contractor may bring an action to the court of claims in accordance with Chapter 2743. of the Revised Code. * * *"

There are no provisions in the contract regarding administrative remedies. Thus, pursuant to R.C. 153.12(B), the Court of Claims was the appropriate forum in which to bring this action. Furthermore, there is no conflict with R.C. 2743.02(A) since R.C. 153.12 expressly refers to R.C. Chapter 2743. The debtor clearly had a state law claim which he could assert against the state, which claim is an asset of the bankruptcy estate. Accordingly, the plaintiff trustee has and is asserting a state law claim herein. The Court of Claims has jurisdiction over this matter pursuant to R.C. 153.12(B) and R.C. Chapter 2743. The bankruptcy issues relate only to the assertion of the alleged "setoff" by the state and not to the assertion of the state law claim by plaintiff.

Prior to addressing plaintiff's assignment of error, a review of the pertinent bankruptcy provisions is necessary. When an entity files a petition for relief pursuant to Section 301, the date of that filing is crucial to all later events of

that entity and its creditors. Where, as here, the entity is filing for relief under Chapter 11 (reorganization), the debtor-entity becomes a "debtor-in-possession" ("DIP") unless a trustee is appointed by the court. See Section 1101(1) and Section 1104. See, also, *In re WWG Industries, Inc.* (C.A.11, 1985), 772 F.2d 810, 811.

Pursuant to Section 1107(a), in cases where no trustee is appointed, the DIP has the following rights, powers, and duties (which are essentially the same as the trustee's rights and powers):

"Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court precribes [*sic*], a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter."

The right to continue operating the business is included in the rights enuring to the DIP. Furthermore, pursuant to Section 365(a), the DIP with the court's approval may assume or reject any executory contracts of the debtor, subject to the remaining provision of Section 365.

As stated previously, the date of the filing of the petition for relief becomes the focal point. It is this date upon which an estate is "created," which includes all of the debtor's property "wherever located and by whomever held." Section 541. Generally, with a few specific statutory exceptions, this "property" includes "all legal or equitable interests of the debtor * * * as of the commencement of the case." Section 541(a)(1).

Perhaps the single most important provision of the Bankruptcy Code to the debtor is the automatic stay provision of Section 362, which operates as a stay as to the commencement or continuation of actions against the debtor that could have been brought prior to the filing of the petition. The stay also prohibits an act to obtain possession of property of the estate, or any exercise of control over that property. Section 362(a)(7) further prohibits " * * * the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor[.] * * * "

As the legislative history indicates, the automatic stay provides a debtor a "breathing spell" in order to make an attempt at reorganization. It also functions to protect creditors from each other, ensuring that no creditor will receive preferential treatment.

By the first and second assignments of error, plaintiff contends that defendant wrongfully withheld the progress payments and, in doing so, prevented the debtor from reorganizing. There is no contention by either

party that the contract at issue was not executory in nature at the time of the filing of the petition. In finding no specified definition of "executory contract" in the Bankruptcy Code, the United States Supreme Court in *Natl. Labor Relations Bd., v. Bildisco & Bildisco* (1984), 465 U.S. 513, 522, 104 S.Ct. 1188, 1194, 79 L.Ed.2d 482, 493, fn. 6, reasoned:

" * * * [T]he legislative history of § 365(a) indicates that Congress intended the term to mean a contract 'on which performance remains due to some extent on both sides.' "

It is clear from this definition that this contract was executory at the time of the filing of the petition. The debtor still had obligations under the contract to complete the electrical work, while defendant had a continuing obligation to make progress payments and ultimately final payment when the project was satisfactorily completed.

The filing of the petition in bankruptcy does not in and of itself relieve the parties of their obligations under the executory contract. However, after the filing of the petition, both the debtor and the creditor acquire additional rights in regard to the executory contract. Section 365 provides that an executory contract may be assumed or rejected by the trustee (debtor-in-possession) subject to court approval. This provision may be used to relieve a debtor from a burdensome contract. If the contract is properly rejected, then, pursuant to Section 365(g)(1), such rejection constitutes a breach of that contract, with the breach deemed to have occurred immediately prior to the date of the filing of the petition. Therefore, a rejection will give rise to a claim for the nonbreaching party against the debtor's estate.

It is not disputed that neither the debtor nor defendant took advantage of Section 365. The executory contract in this case was neither assumed nor rejected by debtor. Without the intervening factors in this case, the debtor could have made such assumption or rejection (subject to court approval) at any time prior to the confirmation of a plan. Section 365(d)(2). Furthermore, Section 365(d)(2) also provides that any party to the contract may request the court to order the trustee (DIP) either to assume or reject the contract. In other words, defendant could have requested the court to order debtor to make a decision regarding the contract if defendant felt debtor was financially unable to complete the project.

Notwithstanding both parties' failure to proceed under Section 365, the executory contract continued in effect after the filing of the petition. Thus, the question becomes one of common-law breach of contract. After determining which party first materially breached the contract, the applicable bankruptcy law must be analyzed in light of that determination.

■ Plaintiff contends that defendant breached this contract first by failing to make timely progress payments to debtor. Defendant, on the other hand, contends that it was debtor's abandonment of the job which first materially breached the contract. An owner's failure to timely pay properly submitted draw requests may constitute a material breach of the contract. See, generally, 3A Corbin on Contracts (1960) 269–277, Sections 692–693. See, also, *Turner Concrete Steel Co. v. Chester Construction & Contracting Co.* (1921), 271 Pa. 205, 210, 114 A. 780, 782, wherein the court properly reasoned: " * * * A failure to liquidate installments as they come due may justify the rescission of the contract and the abandonment of the work. * * * "

■ In order for the failure of the owner to pay progress installments to constitute a breach of the construction contract, the failure must go "to the essence of the contract." *Kersh v. Montgomery Development Ctr.* (1987), 35 Ohio App.3d 61, 62, 519 N.E.2d 665, 667. See, also, *Aiello Constr., Inc. v. Nationwide Tractor Trailer Training & Placement Corp.* (1980), 122 R.I. 861, 863, 413 A.2d 85, 87, and *Zulla Steel, Inc. v. A & M Gregos, Inc.* (1980), 174 N.J.Super. 124, 415 A.2d 1183.

The trial court in addressing that issue of the timeliness of defendant's payments reasoned that, because debtor could not have reasonably expected payment of either draw request at issue (ten and eleven) prior to its abandonment of the project, no breach occurred by defendant in not making those payments. The court relied upon a provision of the contract which states: " * * * Payment shall be made within thirty days from the date of approval of contractor's payment request by the Deputy Director of Public Works. * * * " However, R.C. 153.14, which applies to all public improvement contracts including this one, states in pertinent part:

"Payment on approved estimates filed with the owner or its representative shall be made within thirty days. Upon the failure * * * to make such payment within thirty days * * * there shall be allowed to the contractor, in addition to any other remedies allowed by law, interest on such moneys not paid within thirty days. * * * "

R.C. 153.12, which specifically addresses partial progress payments, reads in pertinent part:

"Partial payment to the contractor for work performed under the lump sum price shall be based on a schedule prepared by the contractor *and approved by the architect or engineer* who shall apportion the lump sum price to the major components entering into or forming a part of the work under the lump sum price." (Emphasis added.)

Thus, it is clear from a reading of these two provisions that the only approval required is that of the *architect* and subsequent submission to

Deputy Director of Public Works ("director"), which begins the thirty-day time period to pay, *not* the approval of the director as defendant contends. Even if approval of the director were contemplated, such approval would be required to be made within a reasonable time.

Based upon the evidence before it, the trial court determined that, while the debtor initiated draw request ten on May 24, 1985, such request did not reach defendant until after June 26, 1985. Furthermore, draw request eleven was initiated by debtor on June 13, 1985, and reached defendant at a later unspecified date. Plaintiff does not dispute these dates. Plaintiff, further, does not dispute that debtor abandoned the site on June 25, 1985.

As is demonstrated by the applicable law, defendant had thirty days following the submission to it of an approved progress draw request to pay that amount to debtor. Clearly, no progress payment was required to be made prior to debtor's abandoning the site on June 25, 1985. Even assuming that approved draw request eleven reached defendant on June 13, 1985, defendant was not required to make payment on it for thirty days—July 13, 1985. Therefore, defendant did not breach this contract. Rather, it was debtor's abandonment of the site and refusal to complete the project which constitute the material breach of this contract.

The question then becomes what effect, if any, does debtor's filing a petition for relief under the Bankruptcy Code have upon defendant's withholding the progress payments. The trial court's discussion of the applicable bankruptcy law is incomplete and not entirely accurate. The appropriate starting point in this case is the application of setoff and recoupment[1] in bankruptcy proceedings.

Plaintiff contends that defendant violated the automatic stay provisions of Section 362(a) by failing to turn over property of the estate—progress payments ten and eleven. The trial court incorrectly relied upon setoff to justify defendant's failure to turn over the payments. Because the debtor breached the contract with the state, the doctrine of recoupment in the context of bankruptcy proceedings would support a finding for defendant. "Recoupment" was accurately defined in *Akron Natl. Bank v. Roundtree* (1978), 60 Ohio App.2d 13, 17, 14 O.O.3d 10, 13, 395 N.E.2d 525, 529, as " * * * a demand arising from the same transaction as the plaintiff's claim. * * * ". Ohio has long recognized the common-law defense of recoupment to reduce damages

---

1. Although in Ohio the distinction among setoff, recoupment, and counterclaim has been somewhat obscured or merged (see R.C. 2309.19 and Civ.R. 13), the distinction between common-law setoff and recoupment is of importance in application of bankruptcy law since different results may be required.

sought to be recovered by a plaintiff. On the issue of recoupment, the court in *M.B. Upton & Co. v. I.J. Julian & Co.* (1857), 7 Ohio St. 95, 97, reasoned:

" * * * 'It is a right so reasonable in itself, so necessary to the simple and economical administration of justice, and so entirely congenial to our system of jurisprudence, that, however doubted or denied in some parts of the State, it has, in general, commended itself to our courts, and become well established.' * * * " (Citations omitted.)

Similarly, present R.C. 2309.19 provides that cross-demands are "deemed compensated as far as they equal each other," which section deals specifically with cases of assignment of one of the cross-demands or death of one of the parties.

In the bankruptcy setting, "setoff" and "recoupment" have very different meanings. Setoff must arise under separate independent contracts and is controlled by Section 553, Title 11, U.S.Code, while recoupment is not. See *Lee v. Schweiker* (C.A.3, 1984), 739 F.2d 870. Specifically, Section 553 allows setoff of pre-petition debts and pre-petition claims, provided that mutuality of parties exists. As a result of these requirements, setoff is permitted only in narrow circumstances. See *In re B & L Oil Co.* (C.A.10, 1986), 782 F.2d 155.

However, the doctrine of recoupment is not so limited, even in the bankruptcy context. As reasoned by the court in *Westinghouse Elec. Corp. v. Fidelity & Deposit Co. of Maryland* (E.D.Pa.1986), 63 B.R. 18, 20:

" * * * The right to recoupment, unlike the right to setoff is unaffected by bankruptcy. Specifically, in the case of recoupment, there is no prohibition against applying post-petition payments due to the debtor or to reduce a pre-petition debt owed by the debtor." (Citations omitted.)

Furthermore, in a construction contract case, the court in *In re Clowards* (D.Idaho 1984), 42 B.R. 627, 628, adeptly reasoned:

" * * * Recoupment allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the *same transaction* to arrive at a just and proper liability on the plaintiff's claim. Collier on Bankruptcy, § 553.03 (15th Ed.1984). * * * " (Emphasis in original.)

In contrast, setoff involves claims of a defendant and plaintiff that arise out of *different* transactions. See *In re Boyd* (Bankr.N.D.Tex.1989), 96 B.R. 694.

The general acceptance of courts in bankruptcy proceedings to apply the doctrine of recoupment in instances where Section 553 setoff will not apply is supported by the basic premise of recoupment. Because recoupment is more of an affirmative defense to a debtor's claim rather than a separate obligation of the debtor, the application of the setoff provisions of Section 553 would be inequitable. See *Clowards, supra; Westinghouse, supra;* and *Lee, supra.* Recoupment, unlike setoff, *directly* (because of the requirement of the same

transaction) reduces the amount of the debtor's claim. See *In re Pennsylvania Tire Co.* (Bankr.N.D.Ohio 1982), 26 B.R. 663, 675.

Most recently, another court analyzed the effect of recoupment on Section 362(a) (the automatic stay). See *In re Holford* (C.A.5, 1990), 896 F.2d 176, 179, wherein the court reasoned that, because the funds represented by the recoupment were not property of the estate, the automatic stay provisions do not apply, and no violations occur where the amount recouped is equal to or less than the debtor's claim against the defendant.

Applying these principles to the facts of this case, since the debtor was found to have breached materially the contract by abandoning the job site on June 25, 1985, defendant was entitled to recoup its damages by withholding the progress payments due debtor. This is not an appropriate case for setoff as the claims giving rise to the action are not the result of different transactions. Rather, a single transaction—one contract—is at issue. In such circumstances, clearly, it is the doctrine of recoupment which applies, and the application of that doctrine is not affected by the filing of the petition for bankruptcy relief. Furthermore, the later conversion of this case to a Chapter 7 proceeding would not affect defendant's right of recoupment once established. See *Clowards, supra,* 42 B.R. at 628.

Plaintiff would have no interest in those progress payments if it breached the contract because of defendant's right to recoup its losses. Without an interest in the funds, plaintiff's contentions that they should be turned over to the estate, and that by not doing so defendant violated the automatic stay, must fail. Furthermore, because recoupment is applicable due to the debtor's breach, defendant was not required to move for relief from stay because the stay would be inapplicable.

Therefore, since debtor is the party who materially breached this contract by abandoning the site on June 25, 1985, defendant was entitled to recoup its damages as a result of the breach. Plaintiff does not contend that defendant's assertions regarding the amount of damages are inaccurate, and we do not address that issue. Because of the doctrine of recoupment and its continuing application in bankruptcy proceedings, defendant did not violate the automatic stay. Furthermore, defendant did not have a duty to turn over those payments to the estate. Accordingly, plaintiff's first and second assignments of error are not well taken.

■ By the third assignment of error, plaintiff contends that defendant did not give plaintiff the notice required by R.C. 153.17 in order to terminate the contract. Without a transcript, this court has only the evidence as found by the trial court to review this issue. Both the contract and R.C. 153.17 provide that, upon the owner's dissatisfaction with the contractor's performance of the

contract, the owner shall notify the contractor in writing and give the contractor an opportunity to correct the problems. A total of twenty days (fifteen following the notice) is given to the contractor to cure the defects.

The trial court found, and it is not disputed by plaintiff or debtor, that the debtor had actual knowledge of defendant's intent to terminate the contract. The trial court further found that originally defendant sent notice of the intent to terminate the contract to debtor by certified mail on June 28, 1985. When this letter went unclaimed by debtor, defendant sent the notice by ordinary mail.

In reaching its determination that debtor had actual knowledge of defendant's intent and ample time in which to correct the problems prior to the termination date of July 25, 1985, the trial court relied upon a letter sent by debtor's surety to debtor and a corresponding response letter sent by debtor to its surety. The trial court found, based upon the evidence before it, that, while defendant may have been in technical noncompliance with R.C. 153.17, debtor had sufficient notice and the requisite statutory time to reenter the project and correct any problems. However, as evidenced by debtor's letter to its surety, debtor had no intent to return to the job and could not do so unless defendant made the progress payments.

As stated previously, debtor is not now contending that it was unaware of the state's intent to terminate. In fact, the evidence indicates otherwise. Furthermore, defendant's technical noncompliance with R.C. 153.17 did not violate any of debtor's due process rights. Sending such notice by certified mail and then by ordinary mail when the initial attempt failed was notice " * * * reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * " *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873. Accordingly, plaintiff's third assignment of error is not well taken.

By the fourth assignment of error, plaintiff contends that defendant's failure to escrow the disputed progress payments injured debtor's ability to reorganize successfully. R.C. 153.63(A) provides that money owed by an owner shall be paid to the contractor on the date due or placed into an escrow account. However, R.C. 153.63(D) provides:

"If the money required to be paid or deposited under division (A) of this section is not paid or deposited, the governmental entity shall pay to the contractor an amount equal to eight per cent annual interest compounded daily."

Furthermore, debtor has the remedy under the statute if it had been determined that the money was owed to debtor—"eight percent annual interest compounded daily."

Plaintiff contends that defendant's failure to escrow the payments somehow prevented debtor from successfully reorganizing. However, this contention goes directly to plaintiff's first and second assignments of error, upon which we have previously ruled. Defendant's failure to escrow the payments in no way affected debtor's attempt at reorganization. Accordingly, plaintiff's fourth assignment of error is not well taken.

For the foregoing reasons, all of plaintiff's assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and CACIOPPO, JJ., concur.

MARY CACIOPPO, J., of the Ninth District Court of Appeals, sitting by assignment.