[Cite as *H & H Glass, Inc. v. Empire Bldg. Co., L.L.C.*, 2016-Ohio-3029.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| H&H GLASS, INC., | : | APPEAL NOS. C-150059 |
| | | C-150227 |
| Plaintiff-Appellee/Cross-Appellant, | : | TRIAL NO. A-1307118 |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| EMPIRE BUILDING CO., LLC., | : | |
| and | : | |
| TRAVELERS INSURANCE CO., | : | |
| Defendants-Appellants/Cross-Appellees. | : | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 18, 2016

*Benjamin, Yocum, & Heather, LLC,* and *Thomas R. Yocum*, for Plaintiff-Appellee/Cross-Appellant,

*Lindhorst & Dreidame*, *Barry F. Fagel* and *Matthew C. Curran*, for Defendants-Appellants/Cross-Appellees.

Please note:  this case has been removed from the accelerated calendar.

**STAUTBERG, Judge.**

{¶1} This case involves a contract dispute. Plaintiff-appellee/cross-appellant H&H Glass, Inc., ("H&H") entered into a contract with defendant-appellant/cross-appellee Empire Building Co. ("Empire") to perform construction work on Sayler Park School, a Cincinnati Public Schools building. Empire was the general contractor on the project. H&H was a subcontractor that contracted with Empire to supply materials and services related to the installation of aluminum window systems, as well as window and door frames. Defendant-appellant/cross-appellee Travelers Insurance Co., a.k.a. Travelers Casualty & Surety Co. of America, ("Travelers") was the surety for Empire.

{¶2} During the course of its work on the project, H&H submitted monthly pay applications to Empire. Empire, in turn, submitted those applications to Turner Construction, the project manager, for payment. From the start of the project, disputes arose between H&H and Empire regarding whether H&H had properly billed for work performed, the timeliness of payments from Empire to H&H, and retainage amounts withheld by Empire. These differences ultimately culminated in H&H walking off of the job. As a result, Empire had to hire another contractor, Andy's Glass, to complete H&H's work on the project.

{¶3} H&H later sued Empire for breach of contract, asserting that Empire had failed to pay H&H $27,084.80. Included in this amount was $11,095.01 for custom-made "storefront materials" that H&H had had in its possession at the time that it quit working on the project. H&H also claimed that Travelers had breached its obligation as a surety when, after H&H had demanded payment under the terms of its contract with Empire, Travelers had refused to pay. H&H contended that Empire and Travelers were jointly liable for its damages. H&H also asserted a prompt-pay claim under R.C. 4113.61, which included a request for attorney fees.

{¶4} Empire counterclaimed. It asserted, in part, that H&H had breached its contract with Empire when it walked off of the job before completing it, and that Empire had suffered $25,000 in damages as a result.

{¶5} Following a bench trial, the trial court determined that Empire had materially breached its contract with H&H by failing to pay in accordance with the contract, and that, following the breach, H&H had been excused from further performance. The court awarded H&H $27,084.80. This amount included the cost of the custom-made storefront materials. Neither side was awarded attorney fees. The court further held that the Prompt Pay Act did not apply. Empire and Travelers appealed, and H&H cross-appealed.

## Empire and Travelers' Appeal

{¶6} In Empire and Travelers' first assignment of error, they contend that the trial court erred when it held that Empire's breach was "material," thereby excusing H&H from further performance under the contract.

{¶7} A breach of contract exits where, without legal justification, a party fails to perform any promise that forms a whole or part of a contract. *Natl. City Bank of Cleveland v. Erskine & Sons,* 158 Ohio St. 450, 110 N.E.2d 598 (1953), paragraph one of the syllabus. However, not all breaches are created equal. A failure to perform a promise that is nominal, trifling, technical, or slight does not excuse performance under the contract by the nonbreaching party. *Kichler's, Inc. v. Persinger*, 24 Ohio App.2d 124, 128, 265 N.E.2d 319 (1st Dist.1970). In other words, "[a] breach of a portion of the terms of a contract does not discharge the obligations of the parties to the contract, unless performance of those terms is essential to the purpose of the agreement." *Software Clearing House, Inc. v. Intrak, Inc.*, 66 Ohio App.3d 163, 170,

3

538 N.E.2d 1056 (1st Dist.1990); *see Thomas D. Reynolds & Assoc., Inc. v. Feeks*, 1st Dist. Hamilton No. C-890695, 1991 Ohio App. LEXIS 451, *4-5 (Feb. 6, 1991).

{¶8}   The determination of whether a party's failure was "essential to the purpose" of the agreement—meaning whether a breach was "material"—is a question of fact. *O'Brien v. Ohio State Univ.*, 10th Dist. Franklin No. 06AP-946, 2007-Ohio-4833, ¶ 11. It requires "an examination of the parties' injuries, whether and how much the injured parties would or could have been compensated, and whether the parties acted in good faith." *Id.* Here, Empire claims that the trial court's decision finding that its breach was material was against the manifest weight of the evidence.  It was not.

{¶9}   The contract between Empire and H&H allowed Empire to withhold ten percent of payments, "unless specific provisions to the contrary are indicated in the Contract Documents."  Indeed, one such contract document was the agreement between the owner and the general contractor, which did contain different retainage procedures.  That agreement specified a retainage of eight percent of labor costs billed by H&H until 50 percent of the project was completed.  After 50 percent of the project had been completed, the contract did not allow for any retainage for labor. The contract provided different retainage rates for materials, depending on whether the materials had been installed.  Installed materials were not subject to any retainage.

{¶10}  During the course of its work on the project, H&H submitted seven pay applications to Empire. H&H experienced payment problems from the start.  Empire consistently, and over H&H's objection, withheld more retainage than was allowed by contract on H&H's labor costs. The evidence presented at trial established that the maximum amount of retainage that Empire should have withheld on labor was $2,120. Empire withheld $9,696.80.  At trial, Empire president Joe Haehnle admitted that it paid H&H less on its labor costs than what was due under the contract.

4

{¶11} In addition to failing to pay H&H's labor costs as required, H&H submitted evidence that that Empire had not paid any of its $8,695.30 June pay application by the end of July when H&H walked off of the job.

{¶12} Based on the record before us, we hold that the trial court's decision that Empire's breach was material was not against the manifest weight of the evidence. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. Over the course of six pay applications, Empire had failed to pay approximately $7,500 in labor costs due under the contract. And at the time that H&H had walked off the job, there was another pay application for $8,695.30 pending with Empire. Wrongfully and consistently withholding payment of labor costs can fairly be characterized as a breach going to the "essence" of the parties' agreement. *Ernst v. Ohio Dept. of Adm. Serv.*, 69 Ohio App.3d 330, 337, 590 N.E.2d 812 (10th Dist.1990); *Olympic Painting and Sheeting Co. v. Danbourne Corp.*, 7th Dist. Mahoning No. 79 C.A. 69, 1980 Ohio App. LEXIS 14002, *8 (May 5, 1980). Empire and Travelers' first assignment of error is overruled.

{¶13} In their second assignment of error, Empire and Travelers claim that Empire was entitled to a set-off in damages because it had to pay another contractor to finish the work H&H did not. In their fourth assignment of error, they raise a related argument that Empire should have been allowed to apply the $9,696.80 retainage due to H&H towards paying Andy's Glass.

{¶14} The arguments in support of these assignments of error are based on provisions in Empire's contract with H&H. But H&H was excused from further performance under the contract due to Empire's material breach. Empire was therefore not entitled to take advantage of the contractual provisions providing for set-off of amounts due to H&H's failure to complete the project. *See Danbourne Corp.* at

5

*9; *see generally Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108, 661 N.E.2d 218 (8th Dist.1995). The second and fourth assignments of error are overruled.

{¶15} In their third assignment of error, Empire and Travelers claim that the trial court erred when it found that Empire had refused to purchase custom-made "storefront" materials from H&H. Empire and Travelers claim that this finding was against the manifest weight of the evidence, and therefore that the damage award should be reduced by the cost of these materials.

{¶16} At trial, Katelyn Hamilton of H&H explained that the storefront materials at issue were custom-made for the school project and that they did not have general utility. Hamilton testified that H&H had the storefront materials in its possession and was willing to sell them to Empire. Empire presented contrary evidence that H&H was not willing to sell these materials to it. In reviewing the record, we find no indication that, in affording more weight to H&H's version of events, the trial court so lost its way as to create a manifest miscarriage of justice warranting a new trial. *See State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Empire and Travelers' third assignment of error is therefore overruled.

### H&H's Appeal

{¶17} In H&H's sole assignment of error, it argues that the trial court erred when it failed to award H&H prejudgment interest and attorney fees.

{¶18} H&H first argues that it was entitled to an award of 18 percent prejudgment interest under Ohio's Prompt Pay Act, R.C. 4113.61. In pertinent part, R.C. 4113.61(A)(1)(a) provides that a contractor, within ten calendar days after receipt of payment from the owner or construction manager for improvements to property, shall pay to the subcontractor "an amount that is equal to the percentage of completion of the subcontractor's contract allowed by the owner for the amount of labor or work

performed." Failure to abide by this provision entitles a subcontractor to prejudgment interest at a rate of 18 percent per annum. R.C. 4113.61(A). In addition to an 18 percent interest award, R.C. 4113.61(B)(1) allows the court to award attorney fees to a party that prevails on a prompt-pay claim.

{¶19}  H&H argues that its pay application 6 should have been paid by July 26, 2012, because Tuner had allegedly paid Empire for this bill on July 16, 2012.  H&H also claims that pay application 7, which requested $11,465.20, should have been paid sometime in 2013 when Empire had been paid in full for the entire project.

{¶20}  H&H's argument regarding the Prompt Pay Act ignores the trial court's finding that, due to the nature of the dispute between the parties, the Prompt Pay Act did not apply. *See* R.C. 4113.61(A)(1); *Masiongale Elec.-Mechanical, Inc. v. Constr. One, Inc.*, 102 Ohio St.3d 1, 2004-Ohio-1748, 806 N.E.2d 148 (prejudgment interest is not warranted under R.C. 4113.61 where the contractor, in good faith, withholds amounts over disputed performance of labor or furnishing of materials); *see also Gary Moderalli Excavating, Inc. v. Trimat Constr., Inc.*, 5th Dist. Tuscarawas Nos. 2012 AP 03 0022 and 2012 AP 03 0023, 2013-Ohio-1701, ¶ 49 (prejudgment interest under R.C.4113.61 not warranted when there is a disputed claim).  H&H argues its dispute with Empire involved only a disagreement regarding the amount of retainage, and that therefore the Prompt Pay Act did apply.  The record demonstrates, however, that Empire's disputes concerning payment on H&H's pay applications included disagreements over whether H&H had completed the work billed for, disputes over the storefront materials, and withholding of monies to cover the costs to hire another subcontractor to complete the work H&H had not. H&H's ultimate success on its breach-of-contract action did not preclude a finding of a good-faith dispute, rendering the Prompt Pay Act inapplicable.  And upon a review of the record, we hold that this

finding is not against the weight or the sufficiency of the evidence. *See Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. This argument therefore has no merit.

{¶21} H&H also contends that the trial court should have awarded it attorney fees under the Prompt Pay Act. However, since the Prompt Pay Act does not apply in this case, H&H was not entitled to attorney fees pursuant to that act.

{¶22} H&H's next argues that even if the Prompt Pay Act does not apply, it is nevertheless entitled to statutory interest under R.C. 1343.03. H&H failed to raise this issue in the trial court. It is therefore forfeited for purposes of appeal. *See Preload, Inc. v. R.E. Schweitzer Constr. Co.*, 1st Dist. Hamilton Nos. C-030182, C-030215 and C-030517, 2004-Ohio-2278, ¶ 8.

{¶23} H&H's assignment of error is overruled. The trial court's judgment is affirmed.

Judgment affirmed.

**HENDON, P.J.,** and **MOCK, J**., concur.

Please note:

The court has recorded its own entry this date.