[Cite as *Jones v. Jones*, 2024-Ohio-4506.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| DIANA LYNN JONES | : | |
| Appellee | : | C.A. No. 30022 |
| v. | : | Trial Court Case No. 2016 DR 00127 |
| JEFFREY T. JONES | : | (Appeal from Common Pleas Court-Domestic Relations) |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on September 13, 2024

. . . . . . . . . . .

THOMAS G. EAGLE, Attorney for Appellant

CHARLES W. SLICER, III, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Jeffrey T. Jones appeals from a judgment the domestic relations court that found him in civil contempt for failure to pay spousal support as ordered, sentenced him to 30 days in jail, and set forth the conditions for purging the contempt finding. We find no abuse of discretion in the domestic relations court's ruling. The judgment of the trial

court is affirmed.

## Procedural History

**{¶ 2}** We set forth a portion of the lengthy procedural history of this case in a prior opinion, and we rely on that history here:

Jeffrey and Diana Jones were married in February 2008. They have no children together.

Both parties used to work for the Montgomery County Engineer's Office. Jeffrey worked there from 1991 until he was fired in 2007. Diana worked in the Engineer's Office from 2002 until she was fired in 2009. Diana believed that she was improperly fired on the basis of her gender and in retaliation for filing discrimination complaints with the County Engineer, the Ohio Civil Rights Commission, and the Equal Employment Opportunity Commission. As a result, in 2013, Diana and Jeffrey filed a civil suit against the Engineer's Office and the County Engineer. The suit sought damages for sex and gender discrimination, retaliation, intentional infliction of emotional distress, loss of consortium, breach of contract, reckless conduct, and malice; it also sought punitive damages. The complaint alleged that Diana had been bypassed for promotions and raises and that she had been subject to gender discrimination. The complaint also alleged that, before their marriage, Jeffrey was Diana's supervisor, and he was fired in retaliation for his attempt to intercede on her behalf with the County Engineer. The matter was settled in June 2015. The settlement

agreement stated that the settlement was the "result of bona fide adversarial negotiations to resolve a tort based case involving Plaintiff, Diana Jones' physical sickness."  The agreement further provided that, in exchange for the dismissal of all claims made by both Jeffrey and Diana, the Engineer's Office would pay $750,000 in checks payable to Diana.

In February 2016, Diana filed for divorce. She maintained that the 2015 settlement proceeds were her separate property, but Jeffrey maintained that they were marital.   Jeffrey subpoenaed documents related to the settlement from the Engineer's Office and from the Montgomery County Prosecutor's Office (which represented the County Engineer and the Engineer's Office in the action), which he said contained information supporting his claim.   The Prosecutor's Office moved to quash the subpoenas, arguing that the documents sought were confidential.   The trial court ultimately reviewed the documents in camera and decided not to release any to Jeffrey.

The final divorce hearing was conducted over two days in late 2017 and early 2018.   On June 26, 2018, the trial court issued a final judgment and decree of divorce.   The court concluded that the settlement proceeds were Diana's separate property, because by statute, "[c]ompensation to a spouse for the spouse's personal injury" is that spouse's separate property, R.C. 3105.171(A)(6)(a)(vi), and the settlement agreement provided that the payments were made to Diana for her "physical sickness."   The trial court

also divided the parties' other property, including Jeffrey's interest in two businesses, a farming business and a snow removal/trucking business. Diana's expert valued both businesses combined at $202,477. The court found that the value of the farming business was $110,000 and the value of the snow removal/trucking business was $92,477. The court awarded Diana half of both values ($55,000 and $46,238.50). The court also ordered Jeffrey to pay spousal support of $900 per month for 36 months.

Jeffrey appealed the final judgment and divorce decree, arguing that the trial court erred by failing to release the subpoenaed documents to him, erred in the division of property, and erred by ordering him to pay spousal support. We agreed that the trial court should have permitted Jeffrey to inspect the subpoenaed documents; we also agreed that the trial court erred in its property division. [*Jones v. Jones*, 2019-Ohio-2355, (2d Dist.) ("*Jones I*").]. We first concluded that the court's determination on the settlement proceeds constituted an abuse of discretion. Noting that the trial court's finding that the proceeds were Diana's separate property was based on the language of the settlement agreement, which referred to Diana's "physical sickness," and on the fact that the settlement checks were payable to her, we held that the court should have also considered the other evidence regarding the nature of the proceeds, including the subpoenaed documents and the parties' testimony. *Id.* We then concluded that by denying Jeffrey the right to review the subpoenaed documents, the trial

court had wrongly denied him an opportunity to establish the marital nature of the settlement proceeds.   As for the division of Jeffrey's businesses, we concluded that the trial court erred by awarding Diana half of the snow removal/trucking business; Jeffrey had acquired that business before the marriage and there was no evidence as to the value of the business at the time of the marriage, so the trial court could not have determined that there was any increase in its value.   Lastly, we concluded that, because our decision regarding the property division might [a]ffect . . . the spousal-support determination, the award of spousal support needed to be reconsidered.    We reversed and remanded.   *Id.*

At the end of October 2019, after having given Jeffrey an opportunity to examine the subpoenaed documents, the trial court held a hearing on the nature of the settlement proceeds.   In early February 2020, the trial court issued a judgment in which it again determined that the settlement proceeds were entirely Diana's separate property.   The court found that the language of the settlement agreement plainly and unambiguously showed that the settlement proceeds were for Diana's "physical sickness," and the court refused to consider any other evidence.   As for spousal support, the court again awarded Diana $900 per month for 36 months, retaining jurisdiction to make modifications if there were a change in circumstances of either party.   On March 4, 2020, the trial court entered a new final judgment and decree of divorce that incorporated its property-division and spousal-

support determinations. The court entered the new judgment nunc pro tunc to the original 2018 judgment. The trial court again ordered Jeffrey to pay Diana her share of the marital property within six months of the divorce decree.

*Jones v. Jones*, 2020-Ohio-6851, ¶ 3-8 (2d Dist.) ("*Jones II*"). Jeffrey appealed from the trial court's judgment.

{¶ 3} In *Jones v. Jones*, 2022-Ohio-3074 (2d Dist.) ("*Jones III*"), we set forth additional procedural history as follows.

[On Jeffrey's second appeal,] we affirmed in part and reversed in part the decision of the trial court. [*Jones II*]. Specifically, we held that the trial court had failed to consider all the relevant evidence and erred in its determination that proceeds from the civil-action settlement were Diana's separate property. Based on all the evidence, we found that the settlement proceeds were marital property as a matter of law, and we ordered the trial court to "make an equitable division of the proceeds." *Id.* at ¶ 24. We also held that the trial court did not err by awarding spousal support to Diana in the amount of $900 per month for a period of 36 months. Lastly, we held that the trial court erred in entering a new final judgment and decree of divorce nunc pro tunc.

Upon remand, using the date of the final divorce hearing (November 14, 2017) for valuation purposes, the trial court found that only $403,000 was left from the settlement proceeds out the original sum of $750,000. . . .

The trial court also found that Diana had not spent the settlement proceeds frivolously. Rather, Diana had been unemployed, and the settlement proceeds had been the only income she had on which to survive. Additionally, the trial court found that some of the proceeds from the settlement had been spent before the parties separated and therefore were not solely utilized by Diana. Therefore, the trial court divided the remaining $403,000 in half and awarded each [of the] parties $201,500 "as their equitable share." *Id.* at p. 4. Notably, the trial court did not award Jeffrey attorney's fees for the amounts he purportedly paid before the final settlement was reached in June 2015, finding that the evidence provided by Jeffrey was insufficient "to assess the reasonableness of the fees." *Id.* at p. 5. The trial court also failed to award Jeffrey any interest on his marital portion of the settlement proceeds. On March 14, 2022, the trial court issued a final judgment and decree of divorce incorporating its findings regarding the settlement proceeds from the decision issued on September 2, 2021.

*Jones III* at ¶ 3-4.

{¶ 4} Jeffrey appealed from that judgment. He initially argued that the trial court erred when it: divided the remaining amount of the settlement proceeds, $403,000, instead of the original amount of $750,000; used the date of the final divorce hearing for valuing the settlement proceeds; failed to "equitably" divide the settlement proceeds as it had done with all of the other marital assets at issue in the parties' divorce; and allowed

Diana to spend some of the settlement proceeds in violation of temporary restraining orders that had been in effect without proportionately reducing her final award of those proceeds. *Jones III* at ¶ 7.

{¶ 5} We resolved Jeffrey's arguments on appeal as follows. Regarding the division of the settlement proceeds, we determined that, at the time of trial, approximately $347,000 of the settlement proceeds had been expended and therefore "did not exist for purposes of an equitable division of property." *Jones III* at ¶ 19. We concluded that the trial court had correctly found that the remaining $403,000 was subject to equitable division, noting that it had awarded each party half of that amount. *Id.* In our view, the trial court's use of the hearing date for the valuation of the settlement proceeds took into account that the funds had been diminished, with only $403,000 remaining in the account from the original $750,000 award, and was not an abuse of discretion. *Id.* at ¶ 23. Notwithstanding the existence of a temporary restraining order that ostensibly restricted Diana's use of the settlement proceeds for personal use, we found that the trial court had reasonably concluded that Diana's use of the funds was "justified." *Id.* Thus, we affirmed the trial court's judgment on all of these issues.

{¶ 6} However, we reversed and remanded to the trial court with respect to one issue. Diana had held the proceeds of the settlement throughout the divorce proceedings. We found that Jeffrey was entitled to either his share of any investment earnings accrued over the statutory interest rate on his portion of the settlement proceeds ($201,500) after the valuation date utilized by the trial court or, if the investment income was less than the amount realized using the statutory interest rate, Jeffrey was instead

entitled to interest at the statutory rate. We remanded for the trial court to determine whether investment earnings had accrued or whether statutory interest was appropriate, and to render judgment regarding any additional amount Jeffrey was owed. *Id.* at ¶ 30.

**{¶ 7}** Shortly after our opinion in *Jones III* was entered, Jeffrey sought a stay of any further proceedings on the collection of unpaid spousal support until the issues on remand were resolved. He requested "offsets of the unpaid portions of the prior spousal support orders, against all other obligations" Diana owed to him, including the issues that would be resolved on remand. He also sought an order restraining Diana from any further spending of the settlement amount and/or requiring her to place money in escrow.

**{¶ 8}** Jeffrey asserted that Diana would owe him "well in excess of the entire[ty] of the spousal support order" if the trial court properly offset the respective obligations and calculated the earnings (or interest) on the settlement proceeds. Jeffrey asserted " 'the common-law defense of recoupment to reduce damages sought to be recovered by a plaintiff,' " quoting *Ernst v. Ohio Dept. of Adm. Servs.*, 69 Ohio App.3d 330, 338-39 (10th Dist. 1990). Jeffrey argued that a motion filed by Diana in April 2022, in which she requested that any property award she owed to Jeffrey be offset by the amount of spousal support owed to her, should be dismissed, and any further spousal support order should be stayed "pending determination of the appropriate offset." Finally, Jeffrey argued that the court should "reissue the restraining order" to prohibit Diana from continuing to spend his money or require her "to post an appropriate amount of money to secure and protect [his] interest in that money."

**{¶ 9}** On October 18, 2022, Diana filed a motion to show cause, arguing that

Jeffrey had failed comply with the March 14, 2022 Final Judgment and Decree of Divorce; she filed amended motions to show cause on October 31 and November 1, 2022, arguing that Jeffrey had not made any payment on his spousal support obligation and seeking attorney fees. On January 23, 2023, Diana filed a "Motion to Set Aside Money Judgment and Interest."

{¶ 10} On June 30, 2023, Jeffrey filed a motion to show cause for Diana's "non-payment of property division and costs." Citing the March 14, 2023 final decree, Jeffrey asserted that Diana had failed to pay $1,770.46 on or before June 14, 2022.

{¶ 11} Pursuant to our September 2, 2022 remand in *Jones III*, a magistrate's decision was issued on August 11, 2023. The magistrate noted that the March 14, 2022 final decree "ends with one global order to equalize the property division," with Diana owing Jeffrey $1,770.46 within 90 days as the "totality of the property division." The magistrate found that Jeffrey could "no longer claim an ownership of the [civil settlement] proceeds apart from what was awarded in the March 14, 2022 Decree." The magistrate concluded that, although R.C. 1343.03(A) provides that a creditor is entitled to interest when money becomes due and payable on all judgments, decrees, and orders of any judicial tribunal for the payment of money, R.C. 1343.03(A) only applies to money that is due and payable.

{¶ 12} Citing the "Payment of Property Division" section in the final decree, the magistrate found that Jeffrey's share of the settlement funds, $201,500, had not been due and payable from Diana to him. Likewise, Jeffrey had not been ordered to pay Diana for her share in any of his properties; "the division of property only shows what the other party

owed to the other, not what the party is ordered to pay."

{¶ 13} The magistrate concluded:

[Counsel for Jeffrey] argues that Jeffrey had not had the use of the settlement funds and so Diana should pay interest on his portion of $201,500 going back to the date of trial. This argument ignores the fact that Jeffrey also owed Diana $256,567.08 for her share in the marital property, which he was ordered to pay since [the first and second decrees], with no stays granted. So, while Jeffrey has not had the use and control of his share of the settlement funds, it is equally true that Diana has not had the use of the $256,567.08 which was awarded to her as her share of the properties which remain in Jeffrey's possession and control. It is unjust and inequitable to order interest on only one portion of the property division, and ignore that both parties owe money to the other. Again, Diana was ordered to pay Jeffrey $1,770.46 within ninety (90) days of the filing of [the March 14, 2022 Decree]. Diana owed Jeffrey a definite money judgment on the $1,770.46, and R.C. 1342.03(A) can be applied.

. . .

On March 14, 2022, Decree IV ordered Diana to pay Jeffrey $1,770.46 within 90 days of filing. Though Decree IV was appealed, no stay was granted. Pursuant to R.C. 1342.03(A), Diana owes interest of 3% from June 14, 2022 through December 31, 2022 and interest of 5% in 2023. Therefore, in 2022 Diana owes Jeffrey $28.60 in simple interest and in 2023

Diana owes Jeffrey $59.02 in simple interest through August 31, 2023, for a total of $87.62. Diana shall pay Jeffrey the $1,770.46 as previously ordered, plus an additional $87.62 in interest by August 31, 2023.

This order fulfills the mandate for which the Court of Appeals remanded this matter, as a hearing was held to determine if there were any investment earnings accrued on the marital portion of the settlement proceeds. As stated, there are no marital investment proceeds found over the $403,000 as the valuation date and the last date of marriage are the same day. Further, in that the Court of Appeals wanted interest ordered per R.C. 1342.03(A), it is found that Diana owes Jeffrey $1,770.46 as a definite money judgment and Jeffrey is entitled to interest from the time it was due and owing.

{¶ 14} On August 17, 2023, Diana sought an order certifying that spousal support was owed in the amount of $32,400.

{¶ 15} On August 24, 2023, Jeffrey filed objections to the magistrate's decision related to investment income and interest on the settlement proceeds, arguing that the decision should be vacated. He asserted that the trial court should do the following: 1) award Jeffrey the "investment earnings" to which he was "entitled"; 2) calculate the investment earnings on his portion of the settlement, and not only on the net monetary judgment after offsets; 3) calculate and award the investment earnings for the full time "after" November 14, and not just from the most recent decree; 4) determine the amount of the investment earnings; 5) determine if the investment earnings were over the

statutory interest rate; 6) apply that calculation to Jeffrey's half of the settlement money; 7) award the additional amount he is owed; 8) use November 14, 2017, "as a starting point for calculations"; 9) award him the statutory rate only if the investment income was less than the amount realized using the statutory interest rate; 10) start the accrual of his additional award starting on November 14, 2017; 11) pursuant to R.C. 1343.03, award statutory interest on that amount, until paid; and 12) assess all court costs to Diana. Jeffrey's objections were not addressed in the trial court.

{¶ 16} After a hearing in June 2023, on September 12, 2023, the magistrate ruled on Diana's motions to show cause why Jeffrey should not be held in contempt for non-payment of spousal support. The magistrate found that, despite the multiple appeals, Jeffrey's spousal support obligation had remained constant. The magistrate noted that Jeffrey admitted that he had made no spousal support payments, because he felt that Diana had been living off the investment and interest from the settlement money, which had been at issue in all of the appeals. The magistrate found it significant that Jeffrey had never been granted a stay of the order to pay spousal support. The magistrate found that Jeffrey had been obligated to pay the support as ordered and therefore found him in contempt of court.

{¶ 17} On September 21, 2023, Jeffrey filed objections to the magistrate's decision finding him in contempt. He asserted that the magistrate's decision should be vacated and the trial court should:

1) Address, rule on, and grant, Jeffrey's Motion for Offsets and a Stay, filed September 22, 2022, at least until a final determination of the issues on

remand and pending in Jeffrey's August 24, 2023 Objections, and all subsequent proceedings thereon.

2) Allow and consider Jeffrey's attempted evidence during the hearing of the full grounds and basis for his position and defenses.

3) Reverse, or at the least, stay, any decision that Jeffrey is in contempt of court, pending final resolution of the offset or "setoff" to which Jeffrey appears to be entitled (pursuant to the other prior pending Objections.)

4) Reverse, or at the very least, stay, any disposition or sanctions on any contempt, pending final resolution of the offset or "setoff" to which Jeffrey appears to be entitled.

{¶ 18} Jeffrey subsequently filed supplemented his objections and a supplemental memorandum in support of his objections to the magistrate's September 12, 2023 decision.

{¶ 19} Diana responded to Jeffrey's supplemental objections, arguing that Jeffrey's motion for offset was "a completely separate issue from [his] obligation to pay spousal support," and that Jeffrey had admitted in his testimony that he had not paid "one dime towards his spousal support order."

{¶ 20} On December 22, 2023, the trial court filed the judgment from which this appeal arose. The court overruled Jeffrey's objections and supplemental objections and found him in civil contempt of the court's spousal support order. Jeffrey filed a motion to stay execution of the above judgment, but we overruled the motion.

### Assignment of Error and Analysis

{¶ 21} Jeffrey asserts one assignment of error, identifying three issues for our review:

THE TRIAL COURT ERRED IN DECIDING WIFE'S SPOUSAL SUPPORT MOTION AND FINDING HUSBAND IN CONTEMPT.

{¶ 22} First, Jeffrey asserts that the domestic relations court erred "in not offsetting and staying Diana's spousal support arrearage proceedings" until it determined the "competing obligation" due to Jeffrey. He argues that there was no rational basis to require him to wait on his relief, while Diana was afforded hers, "when the ultimate outcome may still well be that she owes him more than he owed her." Second, Jeffrey argues that the domestic relations court erred in excluding his evidence in defense of the contempt charges, namely evidence of what was owed to him, and erred in finding him in contempt before making a final determination of the parties' obligations to each other. Third, Jeffrey asserts that the domestic relations court erred in finding him in contempt and imposing sanctions without addressing Diana's obligations to him. He argues that his motion for stay should have been granted and asks this court to reverse the finding of contempt and order the domestic relations court "to stay one party's remedies until all parties' remedies are addressed."

{¶ 23} In response, Diana points out that the settlement at issue, on which Jeffrey based his argument for staying his spousal support obligation, did not become a definite money judgment until March 14, 2022, when it was first divided pursuant to our remand, which was well after the spousal support order was entered. Diana asserts that the division of the settlement funds and the spousal support order were entirely separate

issues, that the court was not required to determine offsets before finding Jeffrey in contempt, and that the court did not err in finding him in contempt.

**June 20, 2023 Hearing on Diana's Motions to Show Cause**

{¶ 24} We will first review the evidence presented at the June 20, 2023 hearing before the magistrate.

{¶ 25} Jeffrey acknowledged that he had been ordered to pay $900 in spousal support each month for a consecutive period of 36 months. He further acknowledged that he had made no payments up to that time. But he testified that, in his view, he had "more than paid her the amount of the spousal support" based on the fact that she was living off of the settlement money, half of which was his.

{¶ 26} Diana testified that she had not transferred any money to Jeffrey from the civil settlement at the time of the hearing. She acknowledged that the Payment of Property Division section of the March 14, 2022 divorce decree stated that Jeffrey owed her $256,567.08, and she owed Jeffrey $258,337.54 (which included his half of the settlement, or $201,500.) She also testified that, pursuant to the final decree, she owed Jeffrey roughly $2,000, and he owed her over $30,000 in spousal support. She admitted that she had not paid Jeffrey his $1,770.46 within 90 days of March 14 order, but her attorney objected to questioning about this payment, and the court agreed that it was outside the scope of the hearing.

{¶ 27} At the end of the hearing, Jeffrey's attorney reasserted the position that Jeffrey was entitled to "a common law offset" and that, if he was found in contempt, the offset issue was relevant to "what the purge condition should be[,] if any." The court

responded that, at that point, the spousal support was still just a monthly order, no one had requested that it be reduced to a judgment, and as such, it could not be "set off against the property." Jeffrey's attorney disagreed that it couldn't be offset against the property. The court responded, "I did look into it, and because it's modifiable, even though it's after the fact, someone has to motion the court. I can't just *sua sponte* do it."

**Domestic Relations Court Decision**

{¶ 28} The domestic relations court's written decision stated:

. . . Diana alleges that Jeffrey has failed to pay spousal support as ordered by the Court. Jeffrey claims he should not have to pay spousal support, as he has not been properly paid money that he claims he is owed from a civil settlement. However, the division of the money from the civil settlement is not at issue here. What is at issue is the ordered payment of spousal support, and Jeffrey has been ordered to pay spousal support in Decrees I, II, III, and IV.[1] All four Decrees make clear that Jeffrey is ordered to pay $900.00 per month in spousal support, and the Court of Appeals has affirmed this order as well.

Jeffrey testified that he was aware of the court order to pay Diana $900.00 per month, and when asked if he paid any of the monthly spousal support obligations he answered, "I have not."

---

[1] The court cited the Decrees of June 26, 2018 (Decree I); March 4, 2020 (Decree II); December 13, 2021(Decree III); and March 14, 2022 (Decree IV). We note that on December 13, 2021, the court issued an "Amended Final Judgment and Decree of Divorce," in which it ordered Jeffrey to pay spousal support in the amount of $900 for 36 months and divided the civil settlement funds, awarding Jeffrey and Diana each $201,500.00 as their equitable shares.

The issue of spousal support is separate from the property distribution in the Decree, and Jeffrey's ordered payment is not contingent on that award. Thus, Jeffrey should have been paying his spousal support, as ordered on numerous occasions, and his failure to do so renders him in civil contempt of this Court's orders. Jeffrey is in contempt for failing to pay his monthly spousal support obligation and is sentenced to 30 days in the Montgomery County Jail. This jail time shall remain suspended so long as Jeffrey begins to pay his spousal support obligation of $900.00 per month, with an additional $180.00 toward the arrears through the Support Enforcement Agency . . . . The contempt finding and the suspended jail time may be purged by a lump sum payment of $5,000.00 towards the arrears.

(Footnore added.) Decision and Order, p. 5. The court concluded that the September 12, 2023 Magistrate's Decision remained in full force and effect.

**Analysis**

**{¶ 29}** " 'Contempt is defined in general terms as disobedience of a court order.' " *Geter v. Geter*, 2022-Ohio-2804, ¶ 22 (2d Dist.), quoting *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554 (2001). " 'The power of contempt is inherent in a court, such power being necessary to the exercise of judicial functions.' " *Id.,* quoting *Denovchek v. Bd. of Trumbull Cty. Commrs.,* 36 Ohio St.3d 14, 15 (1988). " 'Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order. . . . Thus, civil contempts are characterized as violations against the party

for whose benefit the order was made.' " *Id.,* quoting *Corn* at 554-55.

{¶ 30} " 'A prima facie case of contempt is made by establishing a prior court order and a violation of its terms,' " and " 'contempt findings must be supported by clear and convincing evidence.' " *Id.* at ¶ 23, quoting *Martin v. Martin*, 2008-Ohio-6336, ¶ 24 (2d Dist.). "After the moving party proves a violation, the nonmovant bears the burden of establishing a defense for noncompliance." *Id.,* citing *Martin.*

{¶ 31} We reviews contempt orders for an abuse of discretion. *Id.* at ¶ 24, citing *State ex rel. Cincinnati Enquirer v. Hunter*, 2013-Ohio-5614, ¶ 24. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted). *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). It is well-settled that most abuses of discretion "will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 32} It is undisputed that Jeffrey had been ordered to pay spousal support throughout this matter, and it is also undisputed that he failed to do so. Thus, a prima facie case of contempt was established. Jeffrey asserts in defense that Diana owed him more than he owed her, based upon the civil settlement. When we remanded the matter in *Jones III*, 2022-Ohio-3074 (2d Dist.), we ordered the domestic relations court to "render judgment based on the investment earnings or the statutory interest rate attributable *to Jeffrey's marital portion of the settlement proceeds"* from November 14, 2017. *Id.* at ¶ 38. The magistrate then awarded Jeffrey statutory interest on $1,770.45, the net

difference in the property division, and not on Jeffrey's portion of the settlement proceeds. We conclude that the magistrate correctly determined that Jeffrey was entitled to statutory interest pursuant to R.C. 1343.03(A) on the amount remaining after the parties' property was divided, not on his share of the civil settlement. The March 14, 2022 Final Decree provided:

### 11. PAYMENT OF PROPERTY DIVISION

Husband owes Wife for her interest in the following:

a.  Jamaica Road residence $27,840.50
b.  Wilson Creek Farms $89,480.10
c.  Kingery and Lambert Farms $17,078.52
d.  McDaniel Farm $57,134.02
e.  Jamestown, Kentucky property $10,033.95
f.  Farming Equipment $55,000.00

**TOTAL OWED TO WIFE $256,567.08**

Wife owes to Husband for his interest in the following

a.  Ghent Avenue residence $29,000.00
b.  SeaDoo $6,250.00
c.  Toyota Truck $5,465.00
d.  ½ Civil Settlement $201,500.00
e.  Tundra payments/insurance $16,122.54

**TOTAL OWED TO HUSBAND $258,337.54**

**IT IS ORDERED** that to equalize the property division, Wife shall pay Husband $1,770.46 within ninety (90) days of this Final Judgment and Decree of Divorce. This amount represents the totality of the property division.

{¶ 33} As the magistrate found, Jeffrey's share of the civil settlement had not been due and payable to him from Diana. R.C. 1343.03(A) states: "when money becomes due and payable upon . . . all judgments, decrees, and orders of any judicial tribunal for the payment of money . . . the creditor is entitled to interest at the rate per annum

determined pursuant to section 5703.47 of the Revised Code." The magistrate did not abuse its discretion in concluding that $1,770.46 was due and payable to Jeffrey, with interest on that amount, and that Jeffrey had not established a valid defense for his noncompliance with the spousal support order. In the absence of an abuse of discretion, Jeffrey's assignment of error is overruled.

{¶ 34} The judgment of the domestic relations court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.